[Crim. No. 7175. Third Dist. Jan. 9, 1974.]

In re TERRY LEE SPENCE on Habeas Corpus.

## Counsel

Heman B. Smith, under appointment by the Court of Appeal, for Petitioner.

Evelle J. Younger, Attorney General, Marjory Winston Parker and Edmund D. McMurray, Deputy Attorneys General, for Respondents.

## Opinion

**REGAN, J.**—We issued an order to show cause in response to an application by petitioner Terry Lee Spence for a writ of habeas corpus wherein he contends the rescission of his parole date by the Adult Authority on October 10, 1972, did not conform to the due process requirements set forth in *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593] and *In re Prewitt* (1972) 8 Cal.3d 470 [105 Cal.Rptr. 318, 503 P.2d 1326].

The petitioner is currently serving a sentence at Folsom Prison after

conviction of various criminal offenses. In February of 1972, the Adult Authority set petitioner's parole date at April 10, 1973.

On August 15, 1972, petitioner appeared before a prison disciplinary committee charged with possession of contraband (i.e., two knives and three hacksaw blades). He was given a copy of the notice of complaint which informed him that the charge would also be referred to the Adult Authority for hearing. On this date no disposition of the matter was made pending the outcome of criminal action by the district attorney who later advised the prison authorities that no criminal prosecution would be forthcoming. On August 25, 1972, the disciplinary committee met again and found petitioner guilty as charged. The committee also recommended that the Adult Authority rescind petitioner's parole date.

On October 10, 1972, petitioner appeared before the Adult Authority where they reviewed the incident of August 10 (discovery of contraband) and the subsequent disciplinary hearing and action. There was, also, a special report prepared for that meeting. Following the hearing, petitioner's parole date of April 10, 1973, was rescinded.

The question whether an inmate prior to a rescission of parole is entitled to due process protections has been decided in *In re Prewitt, supra,* wherein it was held that an inmate is entitled to a hearing which substantially conforms to the *Morrissey* procedures on the question whether an order granting parole should be rescinded as improvidently granted. (8 Cal. 3d at p. 474.) In so holding, the *Prewitt* court, in noting that *Morrissey* requires that proceedings for parole *revocation* must conform to minimum due process requirements, states, "we can perceive no significant distinction between the deprivation of the right to conditional liberty enjoyed by a parolee after release and deprivation of the right to achieve such liberty after a grant thereof but before the date fixed for release." (*Ibid.*)

*Prewitt* further states that when determining whether the procedure followed by the authority in the term-fixing or parole-granting process violates due process " 'the reviewing court must consider the objectives sought to be achieved by the challenged procedure, the possible unfairness to the prisoner, and the availability of alternative procedures which are less burdensome to the prisoner.' (*In re Minnis, supra,* 7 Cal.3d 639, 649 [102 Cal.Rptr. 749, 498 P.2d 997].)" (8 Cal.3d at p. 475.) The *Prewitt* court concludes "that with the exception of the preliminary hearing the requirements of *Morrissey* are applicable in parole rescission proceedings [but] only to revocations of parole occurring after June 29, 1972, and, we now hold, to rescission of parole grants after that date." (*Id.* at pp. 476-477.)

Petitioner first contends there was no probable cause to believe he was in possession of contraband.

The facts, as adduced from the prison reports, show the following:

On August 10, 1972, an inmate Johnson was carrying a cardboard box containing light bulbs. The box was checked visually by two officers at different points. One of the officers noted that Johnson was handling the box in a careless and rough manner. This rough handling of the box apparently caused a false bottom to give way, and metal prison-made knives and hacksaw blades fell onto a concrete floor. Inmate Johnson denied the contraband items were his, stating that he had received the box from petitioner. Petitioner also denied any knowledge of the knives and hacksaw blades. However, he admitted getting an empty box, placing light bulbs in it, and having it under his supervision until it was delivered to Johnson.

Although realizing that the above recited evidence was circumstantial, the disciplinary committee felt that the subject was guilty.

Petitioner's argument is a unique one presented by the decision in *Morrissey*. It doubtless will occur again, especially in the type of case involving rescission of a parole. ■ He apparently wants this court to apply the standard sufficiency of evidence rule. (See, e.g., *People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].) We decline to do so. We also decline the appellate review of administrative agency findings approach. (In general, see 6 Witkin, Cal. Procedure (2d ed. 1971), Appeal, § 261 et seq.)[1] It is true that we are concerned with a factfinding process. (See *In re Branch* (1969) 70 Cal.2d 200, 211 [74 Cal.Rptr. 238, 449 P.2d 174].) However, "[w]e are concerned here not with the 'dynamics of a free society' but with a penal institution . . . ." (*In re Van Geldern* (1971) 14 Cal.App.3d 838, 844 [92 Cal.Rptr. 592].) And, as we have held today in *In re Bell* (1974) *post,* page 643 [111 Cal.Rptr. 581], this court will not attribute bias or malicious motives to members of the prison staff. The Supreme Court specifically left procedural details up to the state courts. (*Morrissey* v. *Brewer, supra,* 408 U.S. at p. 488 [33 L.Ed.2d at p. 498].) We, therefore, hold that the proper rule to be applied is that as set forth in *Pope* v. *Superior Court* (1970) 9 Cal.App.3d 636, 641 [88 Cal.Rptr. 483]: "Even though a prisoner's term may not be refixed 'upon mere caprice or for no reason,' it cannot be said that an order made upon the parole officer's report and recommendation was without cause (*In re Smith,*

---

[1]Neither approach is specifically mentioned by petitioner but the former seems implicit by the argument put forward.

33 Cal.2d 797, 803 [205 P.2d 662]). *It is only when the authority acts 'without information, fraudulently or on mere personal caprice' in revoking parole that the remedy exists* (see *Eason* v. *Dickson, supra,* 390 F.2d 585, 589, fn. 4). As was true of its predecessor, the state board of prison directors, the authority 'is not required to proceed with the formality required by the courts.' (*Matter of Application of Stanton,* 169 Cal. 607, 609 [147 P. 264].) 'The Adult Authority may properly, under its own procedures, determine whether defendant has engaged in conduct that constitutes cause for parole revocation' (*In re Brown, supra,* 67 Cal.2d 339, 342 [62 Cal. Rptr. 6, 431 P.2d 630]). 'This kind of judgment is for the parole authorities, not for the courts' (*Williams* v. *Dunbar,* 377 F.2d 505, 506, cert. den. 389 U.S. 866 [19 L.Ed.2d 137, 88 S.Ct. 131]; see *In re Gomez,* 64 Cal.2d 591, 595 [51 Cal.Rptr. 97, 414 P.2d 33])." (Italics supplied. See also, *People* v. *Hayko* (1970) 7 Cal.App.3d 604, 609 [86 Cal.Rptr. 726] [grounds for revocation of probation need not be established beyond a reasonable doubt].)

We think the above underscored language is the applicable test to be applied to findings of a prison disciplinary committee. Under this test, we hold that the committee was correct in its assessment of the facts available to them. Consequently, there was no denial of due process under *Morrissey.*

The in-prison proceedings leading to the rescission of the parole date are as follows:

Officer Warsham was the charging officer who reported the incident of August 10, 1972, to Watch Lieutenant Price. Warsham prepared the CDC 115 form (disciplinary report). Because of the seriousness of the offense, Price advised petitioner of his constitutional rights and advised him that a disciplinary committee hearing would be held at the next regularly scheduled date. Petitioner was given a copy of the charges against him. Officer Wipf was appointed as the investigating officer. He interviewed the petitioner and other witnesses.

Wipf's findings can be summarized as follows:[2] He was told by petitioner that inmate Reeder had ordered the light bulbs. Reeder denies this. Petitioner and inmate Johnson both "went along with the facts" but each denied guilty knowledge of the contraband. Wipf talked with everybody who might conceivably have had any connection with the incident. He could find no witnesses who could either exonerate petitioner or substantiate the charges against him. Petitioner made no request for any witnesses to appear in his

---

[2] Wipf, under penalty of perjury, declared that he conducted an entirely impartial investigation into the matter.

behalf at the disciplinary hearing, and Wipf knew of none who could have appeared in petitioner's behalf. In his opinion, inmate Johnson was not a necessary witness at the hearing since all he would have been able to say was that petitioner had given him the box, a fact which petitioner had already admitted.

At the disciplinary hearing, the committee had before it the report of the investigating officer, several memoranda prepared by correctional officers who had information about the incident, and photographs of the contraband and the box with the false bottom. Petitioner also appeared at the hearing and spoke in his own defense.

The committee ultimately concluded that petitioner was guilty of possession of contraband. The committee also recommended that the Adult Authority rescind petitioner's parole date. A copy of the decision was given to petitioner.

█ Neither Johnson, who was also charged with possession of contraband, nor petitioner was allowed to confront the other at their respective disciplinary hearings. The reason given by the prison authorities was fear of later retaliation. However, no decision was made by the committee until both cases had been heard. We conclude that the procedures employed met the requirements of *Morrissey* and *Prewitt*. We reemphasize that we are here dealing with a rescission of parole situation where the inmate has not yet been released, and note that *Morrissey* provides confrontation can be denied for "good cause." (408 U.S. at p. 489 [33 L.Ed.2d at p. 499].) We think such "good cause" was shown here.

At the disciplinary hearing on August 15, 1972, petitioner was given a *notice of complaint advising him of the charges and further advising him* the matter would be referred to the Adult Authority. At the same time an associate warden, who was sitting as chairman of the disciplinary committee, verbally told petitioner that regardless of the outcome of the hearing, the matter would be referred to the authority. After the committee acted, he was given a copy of the findings that he was guilty of possession of contraband. This report also contained the committee's recommendation that the Adult Authority rescind petitioner's parole date.

There are bulletin boards at certain locations in the prison which show the names of inmates who will be meeting with the Adult Authority. This is to inform the inmates who will be meeting with the authority of their respective call numbers. The posted list for the October 1972 hearing listed petitioner with a call number.

On October 10, 1972, petitioner appeared before the Adult Authority. At that hearing, and because it was six months prior to his scheduled release date, the authority routinely reviewed petitioner's progress. It also reviewed the incident of August 10, 1972, and the subsequent disciplinary hearing. The authority reviewed the same materials that had been available to the disciplinary committee, along with the completed disciplinary report with findings and recommendations. There was also a special report prepared especially for that hearing.

Petitioner was present at this hearing and was allowed to speak in his own behalf. He apparently made no request for other witnesses to appear.[3] The findings of the Adult Authority's action in rescinding petitioner's parole date are in writing. Our review of the record leads us to conclude that the Adult Authority hearing met the requirements of *Morrissey* and *Prewitt*. We find no denial of due process.

Petitioner contends he was denied assistance of counsel. We reject this contention. As we have held in *Gee* v. *Brown* (1974) (Cal.App.)* the *Gagnon* [*Gagnon* v. *Scarpelli* (1973) 411 U.S. 778 (36 L.Ed.2d 656, 93 S.Ct. 1756)] right to counsel does not extend to rescission hearings under *Prewitt*.

■ Petitioner contends he was denied due process because the investigating officer did not offer immunity to the inmates questioned nor offer to protect an informer.

We have carefully reviewed *Morrissey* and *Prewitt* and can find nothing in either of those decisions which imposes such a requirement and we decline to do so.

The order to show cause is discharged and the petition denied.

Richardson, P. J., and Vasey, J.,† concurred.

---

[3]At the time of this hearing, inmate Johnson was dead.

*Reporter's Note: Hearing granted, March 13, 1974 (Sac. 7994).

†Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.