[Crim. No. 7465. Third Dist., June 13, 1974.]

In re GEORGE F. O'CONNOR on Habeas Corpus.

974

**COUNSEL**

Harry A. Connick and Connick & Young for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Rick McClendon and William C. Prahl, Deputy Attorneys General, for Respondent.

**OPINION**

**REGAN, J.**—Petitioner has alleged in his petition for writ of habeas corpus that his constitutional rights were violated in connection with the proceedings by which the Adult Authority revoked his parole and ordered

him returned to prison.[1] Petitioner's contentions allege violations of the standard for valid parole revocation set forth in the cases of *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593], and *Gagnon* v. *Scarpelli* (1973) 411 U.S. 778 [36 L.Ed.2d 656, 93 S.Ct. 1756].

FACTS

Petitioner was convicted in 1966 of two counts of lewd and lascivious conduct, sentenced to prison, and his term was fixed at 10 years. In 1971 he was released on parole. Among conditions of his parole were two conditions which are of particular significance in this matter. The first was that he not engage in any assaultive activities, violence, or threats of violence. The second was that he not consume any alcoholic beverages, a condition more restrictive than the alternative condition usually appearing on the printed parole agreement prohibiting consumption of alcoholic beverages *to excess*. Another condition was, of course, that petitioner not violate any laws.

On May 21, 1973, the manager of an apartment house in Pismo Beach called the police about a disturbance of peace involving petitioner and one Lorraine Simon. Lorraine reported to the police that petitioner was quite drunk. No arrest was made. On May 22, 1973, Lorraine wrote to petitioner's parole agent, William Huth, stating that petitioner was drunk on May 21, 1973, had choked and beaten her and indicated that this had occurred on previous occasions. Petitioner was taken into custody on June 8 or 9 at his apartment. He had the odor of alcohol on his breath and a full can of beer on his dining table. Parole agents interviewed petitioner in jail and he admitted to drinking and writing checks without sufficient funds, but said a friend had wired him money to cover them, although he had not picked up the money at Western Union. Agent Martel went to petitioner's apartment to search for bank statements or other evidence of violation of Penal Code section 476a, subdivision (b). Agent Huth obtained a list from the bank of several checks returned to petitioner for insufficient funds. On June 15, 1973, Agent Huth interviewed Lorraine and her mother and confirmed that Lorraine had bruises on her shoulders, face, arms and neck.

A report was made to the Adult Authority by Huth on June 18, 1973, charging petitioner with parole violations consisting of assault, consump-

[1]This case is before us by order of the California Supreme Court that the Director of Corrections show cause why the relief prayed for should not be granted. The relief prayed for is return to parole status.

tion of alcohol and writing checks without sufficient funds.[2] By orders of June 22 and June 29, 1973, the Adult Authority ordered that a pre-revocation hearing be held. Notice to petitioner included information about the necessity for finding a probable cause at the prerevocation hearing before a revocation hearing would be held and explained to petitioner that he could question witnesses and designate persons he wished to be notified to attend and speak in his behalf. Petitioner indicated on the blanks provided on the forms that he wished the presence as witnesses of Lorraine, Lou Pelligrini, who, according to petitioner, had agreed to deposit funds to cover his NSF checks, and Agent Huth.

On July 9, 1973, Agent Martel and Adult Authority representative Lawson met with petitioner and informed him both orally and by printed form that he had the right to request that an attorney represent him at the prerevocation hearing, or that he could waive this right. The form also advised him of his right to request an attorney at any subsequent revocation hearing regardless of the choice he made as to the prerevocation hearing. The form contained two clear statements of choice from which he could choose. Petitioner signed the waiver portion of the form stating expressly that he did not want an attorney at the prerevocation hearing but understood that he could request one at the revocation hearing. Later that same day, petitioner wrote Martel a letter stating that he had ". . . learned a great deal more about the Supreme Court decisions relative to my present position and events forthcoming," and that "Because of this I must withdraw my hasty decision not to request an attorney . . . ." He went on to state that he wanted an attorney (at the prerevocation hearing) and had initiated efforts to contact a particular one. On July 10, Martel and Parole Agent Montgomery of Salinas scheduled petitioner's prerevocation hearing to be held on July 19, 1973. Martel received petitioner's letter on July 11 and so notified Montgomery. Montgomery stated he would contact others in the Adult Authority. Later that same day, it was decided that the prerevocation hearing would proceed as scheduled. Agent Martin delivered to petitioner a written notice thereof which petitioner signed in acknowledgment. He wrote above his signature, "I again make request for an attorney."

The prerevocation hearing was held as scheduled on July 19 before a departmental hearing officer at San Luis Obispo County jail. Present

---

[2] On June 21, 1973, a criminal complaint was filed charging petitioner with writing NSF checks, in violation of Penal Code section 476a, subdivision (b). After Agent Martel informed the district attorney that petitioner had been taken into custody for parole violation, the charge was dismissed, "in the interest of justice and for insufficient evidence."

were petitioner, Martel, a parole supervisor from Salinas and a student parole aide. Lorraine did not attend, having written that she was frightened and would be upset. Other witnesses who had been requested to attend were not present and no attorney was present. Agent Huth and petitioner both testified. Responsive to inquiry from the hearing officer, petitioner acknowledged, inter alia, that he had received notice of right to prerevocation hearing, right to counsel, adequate assistance in communicating with witnesses and notice that his request for counsel had been denied. At the hearing petitioner denied all charges against him except one which was that he consumed alcohol on June 8, the day he was taken into custody. The hearing officer took the matter under submission and on July 23, 1973, found probable cause to believe petitioner had violated conditions of his parole by consuming alcohol and assaulting Lorraine on May 21, 1973; by writing several nonsufficient funds checks; and by consuming alcohol on June 8, 1973. On August 22d petitioner was transferred to San Quentin prison for parole revocation hearing.

Charges were filed on August 27, 1973, and received by petitioner on the next day. Petitioner was informed of his right to have witnesses and to request counsel at the revocation hearing. In writing he indicated desire to have counsel and to have Lorraine and Pellegrini, as well as Agent Huth, appear. On August 31, 1973, petitioner's request for counsel was approved and both petitioner and the appointed counsel, Harry Connick, were notified of the hearing date, which was set for October 5, 1973. Connick was notified on September 20, 1973, and he received a copy of the parole violation hearing. Petitioner, Connick and Huth appeared at the hearing. Petitioner pleaded not guilty to the charges, but admitted that he "shook" Lorraine, and consumed alcohol in the form of beer and cocktails on the date of the alleged assault. The Adult Authority revoked petitioner's parole on October 5, 1973.

Petitioner contends that his prerevocation and revocation hearings were not noticed and held within a reasonable time by pointing to the fact that the prerevocation hearing was 41 days after he was taken into custody and the revocation hearing was 117 days after he was taken into custody. He contends these delays were prejudicial and a violation of due process of law. We disagree. The United States Supreme Court has held that a revocation hearing must be held within a "reasonable time" after a parolee has been taken into custody. However, two months was held not to be unreasonable. (*Morrissey* v. *Brewer, supra,* 408 U.S. at p. 488 [33 L.Ed.2d at p. 498].) While *Morrissey* did not deal with a pre-

revocation hearing, it is obvious that the hearing here was held within the two-month period *expressly* held reasonable in *Morrissey*. As to the revocation hearing itself, we have recently held, and we again hold, that a parolee must bear the burden of demonstrating unreasonableness or that he has been prejudiced by the delay. (*In re Williams* (1974) 36 Cal.App. 3d 649, 652-653 [111 Cal.Rptr. 870], pet. for hg. den. by S.Ct. on Mar. 8, 1974.) Petitioner has not demonstrated that these hearings were unreasonably delayed. With respect to notice of these hearings, petitioner was given reasonable and lawful notice of each proceeding.

■ Petitioner next contends that he was unconstitutionally denied both retained and appointed counsel at his prerevocation hearing. *Morrissey, supra,* established certain minimal due process rights in connection with parole revocations but it expressly did not "reach or decide" the question whether the parolee is entitled to retained counsel or to appointed counsel if he is indigent. (See 408 U.S. at p. 489 [33 L.Ed.2d at p. 499].) However, it was decided by the United States Supreme Court in *Gagnon* v. *Scarpelli, supra,* 411 U.S. at page 790 [36 L.Ed.2d at pp. 666-667], that the decision as to the need for counsel in every case in which request for counsel has been made at a prerevocation (preliminary) or revocation (final) hearing must be on a case-by-case basis in the exercise of sound discretion by those authorities charged with administering the parole system.

Petitioner is pleading a personal mistake when he waived right to request counsel and then subsequently attempted to assert it. We do not find this to be a sufficient ground for withdrawal of a waiver of a right to request counsel, which right was fully explained to petitioner both orally and in writing. Accordingly, there was no requirement that the Adult Authority, or its representative, exercise its discretion in the matter of the belated request.

Petitioner also contends (a) that he was denied the right to confront and present witnesses or evidence at both hearings; (b) that illegally obtained evidence was used; (c) that the hearing officer at prerevocation and the panel at revocation hearings were prejudiced and biased; and (d) that his appointed counsel at the revocation hearing was ineffective.

■ *Morrissey, supra,* establishes, inter alia, that a parolee must be allowed to present witnesses, and to confront adverse witnesses at any revocation hearing. Petitioner in this case was not denied these rights and the record discloses he was allowed to contact witnesses and assemble evidence. *Morrissey* does not require (nor to our knowledge does any

other case or statute) that the Adult Authority issue subpoenas to witnesses for parolees. The record shows that petitioner filed two items of documentary evidence with the hearing officer and there is nothing to indicate that any witnesses presented by petitioner would not have been heard.

As to the allegation that illegally obtained evidence was used, there is nothing in the record to so indicate. Petitioner complains that his apartment was entered illegally by police and bank statements and other documents were taken. However, the entry and search of petitioner's apartment after his apprehension for alleged parole violation was clearly lawful under the facts of this case. (*People* v. *Kanos* (1971) 14 Cal.App. 3d 642, 647-648 [92 Cal.Rptr. 614].)

█ *Morrissey, supra,* requires that the hearing body be "neutral and detached." We find nothing in the record to indicate that the prerevocation hearing officer or the revocation panel representing the Adult Authority were not neutral and detached. We have previously held that the Adult Authority, constituting as it does "a traditional parole board," meets the *Morrissey* requirements, and we reiterate that holding here. (See *In re Bell* (1974) 36 Cal.App.3d 643, 646 [111 Cal.Rptr. 581], pet. for hg. den. by S.Ct. Mar. 8, 1974.)

█ With respect to his appointed counsel at the revocation hearing, petitioner contends the Adult Authority caused said counsel to be ineffective by limiting the fee he could charge and by holding petitioner in segregation at San Quentin. We find nothing in the record to substantiate these claims. Counsel was informed of the method for justifying and obtaining compensation, billed the Authority for the hours he had worked and was paid the hourly rate ($23.75) set by the authority. Counsel billed for 10.65 hours of work and was paid accordingly. We find nothing in the record which indicates the fee was so inadequate as to result in ineffective assistance of counsel. In general, with respect to criminal proceedings, ineffective counsel as a ground of reversal must be clearly shown as a demonstrable reality, not merely urged as a matter of speculation. (*People* v. *Reeves* (1966) 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].) This rule is applicable here and petitioner has not shown ineffective counsel as a demonstrable reality. (See *People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) As to the segregation of petitioner, he was placed in there at his own request because of fear of reprisals by another inmate against whom he had testified in another case. Although counsel for petitioner has declared that he (Harry Connick) was "frustrated" by short visits with petitioner in isolation, he admits

that he was allowed to confer with petitioner. Here again we must apply the rules of *Reeves* and *Ibarra, supra*. Petitioner has not met the standards required by the rules.

■ Petitioner was not, as he alleges, denied the report of the factfinders after his prerevocation hearing. The record shows the hearing report was dated July 23, 1973, and petitioner acknowledged receipt on August 28, 1973, of notice of itemized condensed report of the charged parole violations to be presented at the revocation hearing pursuant to the prerevocation hearing report. This is what is required by *Morrissey* with respect to notice. (See 408 U.S. at pp. 488-489 [33 L.Ed.2d at pp. 498-499].) The notice was timely because it was more than a month prior to the revocation hearing on October 5, 1973. (And see, *In re Love* (1974) 11 Cal.3d 179 [113 Cal.Rptr. 89, 520 P.2d 713].)

■ Contrary to petitioner's contention, the refixing of his sentence at a maximum did not violate his rights. His original term had been fixed to expire on November 30, 1976. Since this had not expired, the Adult Authority had the right to refix sentence upon suspension or revocation of his parole. (See *Perkins* v. *Craven* (9th Cir. 1972) 469 F.2d 659, 660-661.)

■ Petitioner's contention that confinement in the segregation unit violated his "prisoner's rights" has no merit since this was done at his own request for his protection. (Cf., *In re Henderson* (1972) 25 Cal.App. 3d 68 [101 Cal.Rptr. 479].)

Petitioner's contention that he was "encumbered" with an alias or fictitious "aka" name on arrest and booking records is meritless since nothing is shown that prejudiced his rights at the parole revocation proceedings. We find no mention of an alias at the hearings, and petitioner fails to convince us that the use of an "aka" designation on any arrest or booking record prejudiced him.

Petitioner's contention that his parole was suspended prior to the prerevocation hearing and that he was not notified of such action is not supported by the record. While the Adult Authority action of June 22, 1973, did indicate that his parole had been suspended and the term refixed at maximum, this action was corrected on June 29, 1973. Petitioner's parole was not suspended until such time as probable cause was found at the prerevocation hearing, which occurred on July 19, 1973. Petitioner was notified of this determination both at the hearing and on August 28, 1973.

Contrary to petitioner's contention, Penal Code section 3056 is constitutional. (*In re Law* (1973) 10 Cal.3d 21, 25 [109 Cal.Rptr. 573, 513 P.2d 621]; see *Worley* v. *California Department of Corrections* (9th Cir. 1970) 432 F.2d 769, 770.)

We do not find cause to take additional evidence or hold an "evidentiary hearing" as is requested by petitioner. His request is denied. Taking the contentions individually, and as a whole, we do not find cause to grant the petition.

The order to show cause is discharged and the writ is denied.

Richardson, P. J., and Good, J.,* concurred.

A petition for a rehearing was denied July 2, 1974, and petitioner's application for a hearing by the Supreme Court was denied August 7, 1974. Wright, C. J., and Tobriner, J., were of the opinion that the application should be granted.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.