[Crim. No. 17293. First Dist., Div. One. Apr. 19, 1978.]

In re ALFONSO CARROLL on Habeas Corpus.

## Counsel

Rowan K. Klein for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci, Franklin D. Elia and Clifford K. Thompson, Jr., Deputy Attorneys General, for Respondent.

## Opinion

**SIMS, J.**\*—By his petition for habeas corpus petitioner seeks review of proceedings in which his parole was revoked and he was ordered returned to prison. He claims he was not afforded a revocation hearing that comported with due process of law because he was denied the right

---

\*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

to confront and cross-examine adverse witnesses. We conclude that his revocation hearing comported with due process of law and that the order revoking his parole was sustained by sufficient evidence. The failure to produce the victim of the petitioner's alleged illegal entry and assault, so that petitioner could confront and cross-examine her, was excused because her disappearance furnished good cause and her prior statements were adequately corroborated. The failure to produce a second witness occasioned no denial of due process or prejudicial error because it is questionable whether he was adverse to the petitioner, as distinguished from the latter's companion, because he was not expressly requested as a witness for petitioner, and because there is a failure to show any prejudice from his absence or from the use of his statement. The failure to produce a third witness, who was in no sense an adverse witness created no denial of due process or prejudicial error in the absence of any showing his whereabouts was not equally available to petitioner, and in the absence of any suggestion as to what his testimony would be.

Because of a suggestion that there was no error because the Adult Authority had no power to issue subpoenas for witnesses at parole revocation hearings, we examine that question and conclude that such power is conferred by provisions of the Government and Penal Codes.

On November 2, 1970, petitioner was convicted of two counts of first degree robbery in violation of Penal Code section 211, and one count of rape by threats of great and immediate bodily harm in violation of then subdivision 4 (since Nov. 23, 1970, subd. 3) of section 261. At the time he also was charged with and admitted a prior conviction of grand theft in violation of subdivision 3 of section 487. He was sentenced from five years to life for each of the two robbery convictions, which were to run concurrently, and from three years to life for the rape conviction, which was to run consecutively with the robbery convictions.

On August 7, 1975, he was paroled. On January 19, 1976, he was arrested in Los Angeles for alleged breaking and entering and assault. Four days later, when the parole authorities were notified of his arrest, a hold was placed against petitioner, and he was interviewed and served with notice of the Adult Authority's suspension of his parole. On the same day, January 23, 1976, he was arraigned and a preliminary hearing was set for February 4, 1976. On that date the prosecutor dismissed the charges because of the failure of a material witness, the alleged victim, to appear at the hearing.

A parole violation report was prepared charging petitioner with violating the conditions of his parole (1) by entering into a residence without obtaining the permission of the occupant, (2) by choking and hitting one of the occupants with a chain, and (3) by his failure to register as required by section 290 of the Penal Code. Petitioner denied the charges and requested and was granted permission to have counsel present at the parole revocation hearing. (See *Gagnon* v. *Scarpelli* (1973) 411 U.S. 778, 787-791 [36 L.Ed.2d 656, 664-667, 93 S.Ct. 1756]; *Gee* v. *Brown* (1975) 14 Cal.3d 571, 574-576 [122 Cal.Rptr. 231, 536 P.2d 1017]; and *In re Love* (1974) 11 Cal.3d 179, 185-186 [113 Cal.Rptr. 89, 520 P.2d 713].) He requested the presence as witnesses of a friendly police detective, the alleged victim, and the alleged crime partner, a fellow parolee.

The record of the hearing, before a panel of three hearing officers, indicates that on April 7, 1976, when the matter was first called for hearing, testimony was received from one of the two arresting officers, and he was cross-examined by petitioner's attorney. He testified as to what he observed and what he was told by the victim. The investigating parole officer testified that he had interviewed the named investigator for the police department who confirmed his report. That report reveals that the police investigator ascertained that the victim had left the area January 31, 1976, and had given no forwarding address. The parole officer also testified concerning the failure of petitioner to register. Petitioner gave his explanation of what had occurred, and also explained why he had not registered. The hearing officer's notes indicate that at that point all agreed to continue the matter to April 9 in order to get more witnesses. Petitioner's attorney insisted that the named police investigator be present.

On the 9th, another officer, who had accompanied the named police investigator in his investigation, appeared. He testified that the victim reiterated her account of the incident as had been reported by the arresting officers. He described the condition of the victim, and produced colored pictures showing her bruises the day after the alleged attack. The investigating parole officer testified that he had contacted a neighbor of the victim, who was the mother of the youth who reportedly saw petitioner's companion enter the victim's premises by removing a screen from a window, and who also was the informant concerning the victim's disappearance from the neighborhood. She had agreed to appear, but failed to do so.

The record indicates that attempts were made on April 1 and April 5 to notify petitioner's companion, Dees, of the hearing by phone; that he failed to return calls as requested by the hearing officer; and that he was not thereafter notified to appear by the Department of Corrections. On appeal within the Adult Authority, the attorney for petitioner asserted without contradiction that in securing the continuance it was represented that the youth who observed Dees enter the premises would appear, but he did not.

The hearing officers found all three charges were sustained, and revoked petitioner's parole. It was ordered that he be returned to prison and be placed on the April 1977 calendar.[1] It was recommended that he be placed in category "D," the report of hearing reading, "Determine future violence potential in community especially as it relates to females; evaluate for existing psychosexual disturbance as related to sadism; in view of unwarranted physical assaults in commitment offense and parole violations is there a diagnosable disturbance. If so is he amenable to treatment, and, if so, how long will treatment take?"

On May 13, 1976, petitioner's attorney filed an appeal on his behalf with the Adult Authority. The appeal was denied July 15, 1976. In denying the appeal the reviewers observed, "In the absence of subpoena power by the Adult Authority, we feel the requirements of Morrissey et seq. were met at the hearing . . . ."

Thereafter, petitioner sought review by petition for writ of habeas corpus in the superior court in San Luis Obispo County, which was denied March 2, 1977, and again with this court, which was denied March 25, 1977 (1 Civ. 16730). His petition to the Supreme Court filed April 5, 1977, was more successful. On August 11, 1977, that court issued an order to show cause returnable before this court. (Crim. No. 19897, citing Pen. Code, §§ 5001, 5052, 5078; Gov. Code, § 11182; *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593]; and *In re Prewitt* (1972) 8 Cal.3d 470 [105 Cal.Rptr. 318, 503 P.2d 1326].) In due

[1]We do not know whether petitioner was released on parole following such a hearing, or whether he has been released subsequently under amendments to the Penal Code effective July 1, 1977. (See Pen. Code, §§ 3057 and 3065.) We do not treat the matter as moot in any event because of the importance of the question involved, and the possible effect on petitioner's term of imprisonment. (See *In re Bye* (1974) 12 Cal.3d 96, 99, fn. 2 [115 Cal.Rptr. 382, 524 P.2d 854] [cert. den., 420 U.S. 996 [43 L.Ed.2d 679, 95 S.Ct. 1437]]; *In re Sturm* (1974) 11 Cal.3d 258, 265 [113 Cal.Rptr. 361, 521 P.2d 97]; *In re Love* (1974) 11 Cal.3d 179, 185, fn. 4 [113 Cal.Rptr. 89, 520 P.2d 713]; and *In re Law* (1973) 10 Cal.3d 21, 23 [109 Cal.Rptr. 573, 513 P.2d 621].)

course, after securing an extension of time, the Attorney General filed his opposition, which has been treated as a return to the order to show cause. Thereafter, after further extension of time, the petitioner filed his traverse, and the parties having waived oral argument the matter was submitted. (See fn. 1 above.)

## I

The evidence before the hearing panel was sufficient to sustain the charges. The arresting officers reported that in answering a burglary call they went to the victim's residence and observed that a window screen had been removed and the window was partially raised. They arrested petitioner and his companion after they had observed the foregoing, heard footsteps running about in the house, and had been told by the exiting victim, whose clothes were disarranged and bloodstained, that there were two men in the house who had broken in and were trying to kill her. They reported that as a result of interviewing the victim and investigating the situation they determined that petitioner's companion had removed the screen from the window, raised the window and entered. The neighbor's son apparently observed that entry. They determined that petitioner was admitted by his companion who went to the front door and opened it.

Officer Porter, one of the two arresting officers, testified on April 7 at the hearing. He stated he observed the removed window screen; that after knocking on the door, the victim came out and said she had been struck by a chain wielded by petitioner who was demanding money; that when she gave him some change he tore her clothing and demanded paper money; that the two forced her and a female companion to lie on a pile of clothing which they attempted to light. He added that the victim told him one of the men had entered through a window, and forced the woman to allow the other man into her room. He also testified that he observed bruises on the victim's legs and neck, and blood on her clothing.

The police investigator secured and reported a more detailed account of the assault on and robbery of the victim, and the attempt to assemble clothes to burn the victim and her companion. His partner testified on April 9, and reiterated that the victim gave the account set forth in the report. He also testified that he observed chain marks on the body of the victim, and identified pictures of her bruises taken on the day after the assault.

According to the reports, petitioner, following his arrest, stated that he went to the residence with Dees, who intended to secure an obligation from the resident. He entered the front door on the invitation of a female resident whom he knew only as Margaret (the given name of the victim). He denied any burglary or assaultive actions on the part of himself or Dees. At the hearing he testified that the occupants were friends of his companions; that the other woman named Reggie, a lesbian pimp, owed Dees money, and they went to the apartment to get the money. He stated that when the alleged victim opened the door she was fully clothed but looked frightened; that neither he nor Dees had anything in their hands; that Dees went to the rear of the apartment, and the alleged victim asked him to remove her from the apartment because Reggie had beaten her for the last time and she had to move. He explained that the alleged victim, whom he had met on three occasions, made up the story involving him because she was a dope user and could not afford to be hasseled by the police as she had marks. (The arresting officer had testified on cross-examination he saw no hypodermic marks on the victim.)

■ The Adult Authority (now Community Release Board) in considering a parole revocation, generally is permitted to consider all relevant evidence, including the reports of the accusing officers, even if such evidence would be excluded as hearsay in a court of law. (*In re Bell* (1974) 36 Cal.App.3d 643, 647-648 [111 Cal.Rptr. 581]. See also Pen. Code, §§ 3056, 3060 and 5077; *Matter of Application of Stanton* (1915) 169 Cal. 607, 609-610 [147 P. 264]; *In re Melendez* (1974) 37 Cal.App.3d 967, 974 [112 Cal.Rptr. 755]; *People* v. *Ruelas* (1973) 30 Cal.App.3d 71, 74 [106 Cal.Rptr. 132] [probation revocation]; and Cassou, *Parole and Probation Revocation* (1974) 9 U.S.F. L.Rev. 43, 78.) By the same token we find that evidence, which because of prophylactic rules would not be admitted in a criminal trial, may be considered in a hearing to determine whether to revoke probation or parole. (See *In re Martinez* (1970) 1 Cal.3d 641, 649-652 [83 Cal.Rptr. 382, 463 P.2d 734] [alleged illegally obtained evidence]; *People* v. *Calais* (1974) 37 Cal.App.3d 898, 904 [112 Cal.Rptr. 685] [*id.*]; *People* v. *Hayko* (1970) 7 Cal.App.3d 604, 610 [86 Cal.Rptr. 726] [*id.*]; *In re Tucker* (1971) 5 Cal.3d 171 [95 Cal.Rptr. 761, 486 P.2d 657] [qualified on another issue in *In re Love* (1974) 11 Cal.3d 179, 190 (113 Cal.Rptr. 89, 520 P.2d 713)] (voluntary confession obtained without *Miranda* warning); and *In re Brown* (1967) 67 Cal.2d 339, 342 [62 Cal.Rptr. 6, 431 P.2d 630].) In *Morrissey* v. *Brewer, supra,* after laying down the rules discussed below (part II), the court added, "We emphasize there is no thought to equate this second stage of parole

revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." (408 U.S. at p. 489 [33 L.Ed.2d at p. 499]. See also *Gagnon* v. *Scarpelli, supra,* 411 U.S. 778, fn. 5 at p. 783 [36 L.Ed.2d 656, at p. 662]; *In re Bye* (1974) 12 Cal.3d 96, 110, fn. 15 [115 Cal.Rptr. 382, 524 P.2d 854], and accompanying text; and Annot., Parole or Probation Revocation (1974) 36 L.Ed.2d 1077, § 21, pp. 1111-1115.)

The resolution of the conflict before it was for the Adult Authority. The evidence sustains its findings. (See *In re Melendez, supra,* 37 Cal.App.3d 967, 974; and *People* v. *Calais, supra,* 37 Cal.App.3d 898, 904; and *In re Spence* (1974) 36 Cal.App.3d 636, 639-640 [111 Cal.Rptr. 782].) If the order of revocation is to be attacked it must be because the petitioner was denied due process of law under the circumstances related above.

## II

In *Morrissey* v. *Brewer, supra,* 408 U.S. 471, the United States Supreme Court ordained that the following be included in the minimum requirements of due process for a parole revocation hearing: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." (408 U.S. at p. 489 [33 L.Ed.2d at p. 499]. See also, *Gagnon* v. *Scarpelli, supra,* 411 U.S. 778, 786 [36 L.Ed.2d 656, 664]; *Gee* v. *Brown, supra,* 14 Cal.3d 571, 574; *In re Bye, supra,* 12 Cal.3d 96, 110; *In re Prewitt, supra,* 8 Cal.3d 470, 473-474, fn. 5; and *People* v. *Vickers* (1972) 8 Cal.3d 451, 452, 457-458 [105 Cal.Rptr. 305, 503 P.2d 1313]. Cf. *Wolff* v. *McDonnell* (1974) 418 U.S. 539, 559-563 [41 L.Ed.2d 935, 952-955, 94 S.Ct. 2963]; *In re Sturm* (1974) 11 Cal.3d 258, 265-266 [113 Cal.Rptr. 361, 521 P.2d 97]; and *In re Law* (1973) 10 Cal.3d 21, 24-26 [109 Cal.Rptr. 573, 513 P.2d 621].)

Petitioner complains that because the authorities failed to produce the victim, the youth who apparently observed petitioner's companion climb

in the window, and his companion, Dees, himself, he was denied the right to confront and cross-examine adverse witnesses, and that there was no specific finding of good cause for not allowing confrontation. He seeks a rehearing on the penalty imposed for the failure to register (see *In re Brown, supra,* 67 Cal.2d 339, 341), and his discharge from the first two charges because lengthy delays have prejudiced him. (See *In re Valrie* (1974) 12 Cal.3d 139, 144-145 [115 Cal.Rptr. 340, 524 P.2d 812] [cert.den., 420 U.S. 938 (43 L.Ed.2d 414, 95 S.Ct. 1148)].) In that case, however, no hearing at all had been given and the petitioner was restored to parole status. Here where there was a hearing the remedy would be to remand the case to permit the necessary cross-examination. (See *People* v. *Calais, supra,* 37 Cal.App.3d 898, 903.) At such a hearing he may defend on the ground that untimely delay between the date of the alleged misconduct and the hearing resulted in prejudice. (See *In re Valrie, supra,* 12 Cal.3d 139, 145.)

We conclude that on the record as a whole there was no denial of due process of law because the record reflects good cause which precluded an opportunity to cross-examine the alleged victim. The youth was not an adverse witness to petitioner; there was no request from petitioner that he be produced; if there was anything he could testify to it would not be any more exculpatory of petitioner than the statement before the hearing officer; and the deletion of this statement, since it was merely corroborative of other evidence, would not vindicate the petitioner. The petitioner's companion was not shown to be an adverse witness, and, although it may have been error for the Adult Authority to fail to produce or subpoena a witness under its control, the petitioner has not demonstrated any prejudicial error by that failure.

## A

Since the Adult Authority in considering petitioner's appeal from the order revoking his parole alluded to its lack of a subpoena power, and since the Supreme Court in transferring the case to this court alluded to provisions of law concerning departmental powers of subpoena, we first address that question.

*In re Melendez, supra,* 37 Cal.App.3d 967, examined the situation at a preliminary parole revocation hearing where the alleged victims after notification failed to appear at the hearing. The court stated: "The lack of any statutory process for compelling the attendance of witnesses at such a hearing does not dispense with the requirement of confrontation.

(*In re Prewitt, supra,* 8 Cal.3d 470, 477, fn. 7.) There was no determination by the hearing officer that disclosure of the identity of any informant would create risk of harm. It therefore would have been contrary to the requirements of *Morrissey* v. *Brewer* to hold petitioner for further proceedings if only the molestation charge had been involved." (37 Cal.App.3d at p. 973.) The cited footnote states in part, "Where the Authority lacks control over a necessary witness it does not appear that it can itself compel attendance. [Citation.] The Authority's problem in producing witnesses may be even more pronounced in the case of parole revocations where the events upon which the revocation is sought generally occur outside the prison community. *Morrissey* nevertheless requires that those witnesses upon whom the Authority relies must be available at the hearing, except where the hearing officer specifically finds good cause for not permitting confrontation. The lack of procedural or administrative tools which make it difficult to produce a material witness otherwise available cannot be urged as an excuse for denying the right to cross-examination and confrontation when that right has been accorded on due process grounds enunciated in *Morrissey*." (8 Cal.3d at p. 477, fn. 7.)

*In re O'Connor* (1974) 39 Cal.App.3d 972 [114 Cal.Rptr. 883], states: "*Morrissey* does not require (nor to our knowledge does any other case or statute) that the Adult Authority issue subpoenas to witnesses for parolees." (39 Cal.App.3d at pp. 978-979.)

The statutes referred to by the Supreme Court in this case, however, reflect that there is a power to issue subpoenas under the general powers conferred on the head of each department of government in the executive branch. Government Code section 11180 provides: "The head of each department may make investigations and prosecute actions concerning: [¶] (a) All matters relating to the business activities and subjects under the jurisdiction of the department. [¶] (b) Violations of any law or rule or order of the department. [¶] (c) Such other matters as may be provided by law." Section 11181 reads: "In connection with these investigations and actions he may: [¶] (a) Inspect books and records. [¶] (b) Hear complaints. [¶] (c) Administer oaths. [¶] (d) Certify to all official acts. [¶] (e) Issue subpoenas for the attendance of witnesses and the production of papers, books, accounts, documents and testimony in any inquiry, investigation, hearing or proceeding pertinent or material thereto in any part of the State." Section 11182 states: "The head of a department may delegate the powers conferred upon him by this article to any officer of the department he authorizes to conduct the investiga-

tion or hearing." Section 11184 further provides in pertinent part: "In any hearing in any part of the State the process issued by the head of a department extends to all parts of the State and may be served by any person authorized to serve process of courts of record or by any person designated for that purpose by the head of the department. . . ."

Sections 11186-11188 provide for compelling attendance through petition in the superior court, and section 11190 gives any party to such a hearing a right to have witnesses subpoenaed upon paying fees and mileage. The Department of Corrections, then in the Human Relations Agency and operative July 1, 1977, in the Health and Welfare Agency (Pen. Code, § 5000, but cf. Gov. Code, § 12803, operative July 1, 1978, and eff. in part July 1, 1979), is such a department. The Adult Authority was, and the Community Release Board now is, one of the three constituent branches of the department (§ 5001). If the director so designates in writing, any other officer or employee of the department shall have the powers granted a head of a department by sections 11180-11191 of the Government Code (§ 5052 and see §§ 5055 and 5078). It has been recognized that the Director of Corrections may exercise the power to issue subpoenas. (Opn. No. 48-21 (1948) 11 Ops.Cal.Atty.Gen. 66.) ▮ Since the Adult Authority (now Community Release Board) is charged with the resolution of questions arising on revocation of parole (§ 5077), and a due process hearing is now mandated, it would appear that the designated subbranch would have the power of the director to issue subpoenas in investigating those matters involving the custody of prisoners (see § 5054) which are expressly vested by law in it (see §§ 5055 and 5077). We so rule. The Adult Authority (now Community Release Board) had authority and power to issue subpoenas pursuant to Government Code section 11181, subdivision (e), for witnesses at a parole revocation hearing whether desired by the state or the parolee, and whether adverse or friendly. We express no opinion, other than in relation to the circumstances of this case, as to the extent to which that power should be exercised.

B

We now examine petitioner's claims in the light of the conclusion that the Adult Authority could have subpoenaed witnesses requested by the petitioner, or who appeared necessary to the state or the hearing panel. ▮ Preliminarily we note that it is established that the right to confront and cross-examine adverse witnesses conferred by *Morrissey* embraces the right to cross-examine the author of the report on which

threatened parole revocation or probation revocation is predicated. (*People* v. *Calais, supra,* 37 Cal.App.3d 898, 902-903; and note *People* v. *Lopez* (1977) 71 Cal.App.3d 895, 900-901 [139 Cal.Rptr. 775]. See also *In re Love* (1974) 11 Cal.3d 179, 183-185 [113 Cal.Rptr. 89, 520 P.2d 713]; and *In re Prewitt, supra,* 8 Cal.3d 470, 474-476 [right to copy of report].) Here the state produced the parole agent who prepared the report, one of the two arresting officers, and one of the two investigating police officers who prepared the police report on which the parole officer relied. All were available for cross-examination by petitioner's attorney.

1

■ The record reflects that the victim had moved and could not be located. In addition to the information referred to above, the parole agent's report states that the Los Angeles Police Department is seeking her whereabouts to determine if continued prosecution on the charge for which petitioner was arrested is feasible. Under these circumstances, issuance of a subpoena would have been fruitless, and petitioner was not prejudiced by the failure of the state to serve a subpoena. Petitioner suggests, however, that *Morrissey* only excuses the failure to produce the actual accuser when the "good cause for not allowing confrontation" consists of the possibility of harm to the witness, such as in informer cases. (See *Morrissey* v. *Brewer, supra,* 408 U.S. 471, 487 [33 L.Ed.2d 484, 497-498]; *In re Prewitt, supra,* 8 Cal.3d 470, 474-475; *People* v. *Lopez, supra,* 71 Cal.App.3d 895, 900; *In re O'Connor, supra,* 39 Cal.App.3d 972, 976-977; *In re Melendez, supra,* 37 Cal.App.3d 967, 974; and *In re Spence, supra,* 36 Cal.App.3d 636, 641.) We do not read the requirement so narrowly.

*Morrissey* recognizes the state's interest in revocation parole as follows: "Release of the parolee before the end of his prison sentence is made with the recognition that with many prisoners there is a risk that they will not be able to live in society without committing additional antisocial acts. Given the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole." (408 U.S. at p. 483 [33 L.Ed.2d at p. 495]. See also *In re Law, supra,* 10 Cal.3d 21, 26; *People* v. *Nelson* (1972) 8 Cal.3d 463, 466-467 [105 Cal.Rptr. 314, 503 P.2d 1322]; *In re Martinez, supra,* 1 Cal.3d 641, 649-650; and *People* v. *Hayko, supra,* 7 Cal.App.3d 604, 610.)

On the other hand petitioner stresses the well-recognized prophylactic effect of confrontation and cross-examination. (See *Davis* v. *Alaska* (1974) 415 U.S. 305, 316 [39 L.Ed.2d 347, 353-354, 94 S.Ct. 1105]; *Jenkins* v. *McKeithen* (1969) 395 U.S. 411, 429 [23 L.Ed.2d 404, 421, 89 S.Ct. 1843]; and *Pointer* v. *Texas* (1965) 380 U.S. 400, 404-406 [13 L.Ed.2d 923, 926-928, 85 S.Ct. 1065]. Cf. *Dutton* v. *Evans* (1970) 400 U.S. 74, 86 [27 L.Ed.2d 213, 225-226, 91 S.Ct. 210].)

*In re Prewitt* cautions, "When determining whether a procedure involved in the term-fixing or parole-granting process violates due process, 'the reviewing court must consider the objectives sought to be achieved by the challenged procedure, the possible unfairness to the prisoner, and the availability of alternative procedures which are less burdensome to the prisoner.' (*In re Minnis, supra,* 7 Cal.3d 639, 649 [102 Cal.Rptr. 749, 498 P.2d 997].)" (8 Cal.3d at p. 475.) In the light of the objectives first mentioned, we conclude that petitioner cannot attack his parole revocation because the victim was unavailable to testify at his parole revocation hearing. This is not a case where the prisoner is denied a right to his conditional liberty because of rumor, or false and inaccurate charges. The charges made were substantiated by investigation and the petitioner was confronted with those who investigated the matter, and had the opportunity to cross-examine them. There was good cause for not producing the complaining witness, and her account was given credence by its repetition, and by the observations of the investigating officers who were percepient witnesses at the hearing. As we have seen (part I), it is no denial of due process to determine the issue on the type of evidence which was available and was produced.

2

█ It is questionable whether the youth who apparently observed Dees climb in a window of the victim's premises was an adverse witness as to petitioner, as distinguished from petitioner's companion. It is also not clear that petitioner requested that he be produced as a witness, or only assumed that he would be. We may assume for purposes of argument that there was some duty on the state to produce him because he was an adverse witness to be cross-examined, or because the petitioner had demonstrated (contrary to our belief) that he was a material witness who could exculpate the petitioner. (We assume that the petitioner's attorney armed with a copy of the January report could have interviewed the witness by April, and so been prepared to show cause of what the witness might state contrary to or in addition to what is found in

the report.) On that assumption, there was error in failing to issue a subpoena and insure his presence.

The error, if any, is not prejudicial and would not warrant a remand and reopening the proceedings to produce the youth's testimony. The officer testified to the physical fact of the screen's removal, and that testimony corroborated both the victim's and the youth's statement that entry by one of the intruders was so effected. If the boy's statement is deleted, the case remains the same. In fact it aided petitioner because it left him free to testify he entered peaceably through the front door. No denial of due process or other error is shown with respect to the failure to produce the youth as a witness.

3

■ *Morrissey* gave the petitioner the "opportunity to be heard in person and to present witnesses and documentary evidence." It does not require that the state must produce witnesses for parolees. (See *In re O'Connor, supra,* 39 Cal.App.3d 972, 978-979. Cf. *In re Prewitt, supra,* 8 Cal.3d 470, 477, fn. 7.) *Prewitt* suggests that the state must produce witnesses in prison under its control if their statements are to be used against him. Here it is arguable that Dees, as a parolee, was under the Adult Authority's control. The record does not indicate, however, that he was an adverse witness whom petitioner was entitled to confront and cross-examine. The duty was on the petitioner to secure his attendance, and upon showing, as appeared from the circumstances, that he was a percipient witness of the events involved, a subpoena could be obtained for his appearance under the ruling we made above.

As a companion of petitioner his whereabouts should have been as equally available to the petitioner as it should have been to his parole agent. There is nothing in the record to indicate that Dees was ever contacted by petitioner's attorney between January and April, or that anyone ascertained what he would testify to if called as a witness. Under those circumstances no violation of *Morrissey* due process standards has been demonstrated.

If we assume, as we are not prepared to, that there was a duty on the Adult Authority to produce on request as a witness for the parolee, any other parolee under its jurisdiction, it may be further assumed that the efforts to secure Dees' presence were inadequate. Two phone calls were hardly sufficient. Dees could hardly be expected to appear and testify in

a matter involving his companion, when he was subject to equal culpability and consequences.

In such event the question remains whether the failure to produce Dees was prejudicial. Several alternatives may be postulated: (1) he refuses to testify for fear of retaliation by petitioner (see *In re Spence, supra*, 36 Cal.App.3d 636, 641); (2) he refuses to testify claiming the privilege of self-incrimination; (3) he throws all the blame on petitioner to avoid inculpating himself; (4) he substantiates petitioner's version of the affair; or (5) because he has been already dealt with, or for more proper motives, he assumes all the responsibility for the entry and assault. Only (4) and (5) would be of assistance to petitioner, and it is questionable that the hearing panel would give his testimony any more weight than that which was given to the petitioner himself. In the absence of an offer of proof of favorable evidence, we are not prepared to speculate what Dees' testimony might have been. The burden is on the petitioner to show error, and that it was prejudicial. This he has failed to do. (See *In re Winn* (1975) 13 Cal.3d 694, 697-698 [119 Cal.Rptr. 496, 532 P.2d 144]; and *People* v. *Peterson* (1973) 9 Cal.3d 717, 726-727 [108 Cal.Rptr. 835, 511 P.2d 1187].)

The order to show cause is discharged and the petition is denied.

Racanelli, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied May 16, 1978, and the petitions of both the parties for a hearing by the Supreme Court were denied June 15, 1978. Clark, J., and Richardson, J., were of the opinion that the petitions should be granted.