[Crim. No. 16866. In Bank. Apr. 11, 1974.]

In re DENNIS REED LOVE on Habeas Corpus.

## COUNSEL

Michael Remington, James A. Jackman and Remington & Jackman for Petitioner.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, S. Clark Moore and Russell Iungerich, Deputy Attorneys General, for Respondent.

## OPINION

**WRIGHT, C. J.**—We issued an order to show cause in response to the application of Dennis Reed Love for a writ of habeas corpus on allegations that the Adult Authority (Authority) had denied petitioner the right to counsel at hearings on both his prerevocation and formal revocation of parole. Additionally, petitioner contends that he was not afforded full disclosure of relevant evidence relating to the alleged violations of parole as mandated by *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593], and *In re Prewitt* (1972) 8 Cal.3d 470 [105 Cal.Rptr. 318, 503 P.2d 1326]. We conclude that petitioner's contention based upon the alleged absence of full disclosure is meritorious, and although we reject petitioner's contention that he was denied his right to counsel at the prerevocation and formal revocation hearings, we conclude that a parolee may, in particular circumstances, be entitled to counsel at future revocation hearings. (See *Gagnon* v. *Scarpelli* (1973) 411 U.S. 778 [36 L.Ed.2d 656, 93 S.Ct. 1756].)

Petitioner was convicted of second degree murder in 1967 and was sentenced to state prison for a term of five years to life. In March 1971 the Authority fixed petitioner's term at nine years and in March 1972 petitioner was released on parole. On December 12, 1972, petitioner was arrested for alleged violations of parole involving the consumption of alcoholic beverages and leaving the state without the prior permission of his parole officer.[1] In support of these allegations his parole officer (Spearance) stated that petitioner had told another officer (Hurst) that petitioner had left the state and had also violated the "no drink" condition.

Petitioner's prerevocation hearing was scheduled for January 31, 1973. He retained counsel and sought to have both Officers Spearance and Hurst present at the hearing. Only Spearance appeared. Petitioner's counsel was present at the hearing but was not permitted to participate in a representative capacity. At the close of argument the hearing officer concluded that there was probable cause to hold petitioner for a formal revocation hearing. The same events occurred, without significant exception, at the formal hearing at which petitioner's parole was revoked. Petitioner's counsel appeared as a witness but again was denied the right to act in a representative capacity.

At the time of the prerevocation hearing petitioner's attorney was told by Spearance and the hearing officer that a "special confidential report" had been prepared by Hurst. Despite repeated requests by petitioner and his attorney a copy of this report was never made available to them. Petitioner asserts that the revocation was necessarily based upon materials contained in the undisclosed report, as he had been advised by the hearing officer at the prerevocation hearing that the recommendation would be against revocation.

The People acknowledge the existence of the alleged report. It appears from affidavits submitted by the People, however, (1) that the report contains no information different from that adduced at the hearings; (2) that the prerevocation hearing officer did not base his decision to hold petitioner for a revocation hearing on the content of the report; and (3) that the revocation of parole at the formal hearing was not based on the content of the report. ▆ As the allegations contained in the affidavits have not been traversed they are deemed admitted and are considered to be true and dispositive of any factual conflicts which their substance encompasses. (*In re Saunders* (1970) 2 Cal.3d 1033, 1048 [88 Cal.Rptr. 633, 472 P.2d 921];

---

[1]Penal Code section 3056 authorizes the reimprisonment of a parolee at any time. Unless hereinafter specified, all statutory references are to sections of the Penal Code.

*People* v. *Sherman* (1932) 127 Cal.App. 417, 419 [15 P.2d 881]; see also, Witkin, Cal. Criminal Procedure (1963) § 825, pp. 790-791.) Allegations in the petition which are specifically admitted in the return are likewise deemed to be true. (*In re Saunders, supra,* at p. 1048.) For purposes of the matter before us it is established: (1) that a special confidential report was prepared by Officer Hurst; (2) that the report relates to the alleged parole violations; and (3) that the report was not used in the revocation determination.

■ *Morrissey* v. *Brewer, supra,* 408 U.S. 471 requires that certain minimal due process protections be afforded a parolee facing revocation. Among such protections is the right to have "evidence against him" disclosed subject only to a right to withhold the identity of an informant if the hearing officer has reason to believe that disclosure would subject the informant to a risk of harm. (*Id.* at p. 489 [33 L.Ed.2d at p. 499].)

We have recently considered this requirement in the case of *In re Prewitt, supra,* 8 Cal.3d 470. In *Prewitt* the Authority rescinded a grant of parole prior to the prisoner's actual release on parole. After first concluding that *Morrissey* applied to such a rescission, we held that except where an informant might be endangered by the disclosure the prisoner must be appraised of the nature and scope of the information in the Authority's possession in order that he might effectively respond to the charges against him. Although *Prewitt* deals with documents submitted pursuant to sections 3022 and 3042—provisions dealing with term-fixing and parole-granting—the rule is necessarily applicable with equal or greater force to documents submitted pursuant to statutes and administrative regulations concerning the very revocation procedures with which *Morrissey* was concerned.

■ The confidential report in the instant case was submitted to the Department of Corrections[2] in response to petitioner's arrest for alleged parole violations with the knowledge of the author that such violations would be urged as the basis for revocation. This is the very type of document, absent a privilege not to disclose, which should have been made available to petitioner. The fact that the document was not relied on by the Authority in the decisional process is irrelevant. The document might have contained material which would have tended to exonerate petitioner, or it might have enabled petitioner to better prepare a defense and assert matters in mitigation. The subsequent nonuse of the document does not insulate it from disclosure, as to so hold would allow the Authority to withhold documents helpful to a parolee simply by not using them in the decisional process.[3]

---

[2]The Authority is an agency of the Department of Corrections. (§§ 5000-5001.)

[3]The People contend that since the report was not used by the Authority it was not "evidence against him" within the meaning of *Morrissey*. (408 U.S. at p. 489 [33

Thus, absent some privilege, the Authority should have provided petitioner with a copy of the report. It is clear, however, that the privilege recognized in *Morrissey* where an informant would be endangered does not here apply. Hurst's identity and whereabouts were known to petitioner as was the fact that Hurst was the author of the report. The only further ground suggested in support of nondisclosure is the claimed confidentiality of the report. However, we have specifically rejected the "confidentiality" privilege in *Prewitt* whether the confidentiality stemmed from an internal classification system or from the fact that the information was given to the Authority in confidence. (*In re Prewitt, supra,* 8 Cal.3d 470, 476.) There is likewise nothing in *Morrissey* which suggests the asserted confidentiality privilege in the instant case.

We conclude that, irrespective of the fact that the report was not used by the Authority in reaching its decision to revoke parole, petitioner had a right as a matter of due process to its disclosure. Petitioner is entitled to a new revocation hearing prior to which a copy of the report must be provided.[4]

Petitioner also contends that he was denied due process at both the prerevocation and formal revocation hearings in that he was not allowed to be represented by retained counsel. ■ We have previously held that a parolee has no right to counsel, appointed or retained, in parole revocation hearings. (*In re Tucker* (1971) 5 Cal.3d 171, 178-179 [95 Cal.Rptr. 761, 486 P.2d 657].)[5]

---

L.Ed.2d at p. 499].) This is obviously a far too limited interpretation of the term, as to conclude that "evidence against him" is equivalent to evidence actually used would constitute authorization for the Authority to withhold even that evidence which would absolve a parolee of all wrongdoing.

[4]The return indicates that petitioner was scheduled to be re-released on parole on November 5, 1973. If we assume that this release has occurred, it does not obviate the need to hold another hearing fully comporting with *Morrissey* on the issue whether there was cause to revoke petitioner's parole and refix his term as a result of the alleged violations of December 1972. Although the parole-granting, revoking and term-fixing functions of the Authority are separate (see §§ 3022, 3042, 3060) neither revocation of parole nor refixing of a term for a longer period may be done without cause. Here petitioner's term was set at nine years at the time of his original parole. After revocation a new parole date was set and petitioner's term was refixed at 10 years, presumably for the same cause that justified the revocation. Thus a new revocation hearing would necessarily involve a determination of whether cause existed not only to revoke parole but also to extend the term.

[5]However, we have extended the right to counsel, as a judicially declared rule of criminal procedure, to probation revocation hearings. (*People* v. *Vickers* (1972) 8 Cal.3d 451, 461-462 [105 Cal.Rptr. 305, 503 P.2d 1313].) *Morrissey* specifically left the question open. We cannot prescribe a similar rule of judicial procedure in the case of parole hearings because, unlike probation, parole is within the exclusive jurisdiction of the Authority which in turn is part of the executive branch of the state government.

In the recent case of *Gagnon* v. *Scarpelli, supra,* 411 U.S. 778 the United States Supreme Court spoke to the question of whether there is a due process right to counsel at probation revocation hearings. It answered the question in a conditional affirmative. *Gagnon* involved a probationer who was re-arrested on a new criminal charge. He was also charged with violations of his conditions of probation in that he associated with persons known to be criminals, and he had been arrested for burglary. He admitted that he was involved in the burglary but argued that the admission had been coerced. A near unanimous court held that there was a limited right to counsel in certain revocation situations, and that the revoking authority had discretion to determine which cases involved such a need. (*Id.* at p. 790 [36 L.Ed.2d at p. 666].) The court further held (*id.* at p. 782 [36 L.Ed.2d at pp. 661-662]) that there was no material distinction between the probation and parole revocation situations, reflecting our earlier holding to the same effect in *People* v. *Vickers, supra,* 8 Cal.3d 451, 458.

██ ██ The high court recognized that the effectiveness of the rights mandated in *Morrissey* may in some instances ". . . depend on the use of skills which the . . . parolee is unlikely to possess . . . where the presentation [of a defense] requires the examining or cross-examining of witnesses or the offering or dissecting of complex documentary evidence." (*Gagnon* v. *Scarpelli, supra,* 411 U.S. 778, 786-787 [36 L.Ed.2d 656, 664]; see also *People* v. *Vickers, supra,* 8 Cal.3d 451, 461.) In such cases a parolee or probationer is entitled to an attorney despite the additional burden placed upon the Authority in terms of time, expense, and manpower.

While the court left the question of whether there is a right to counsel in a particular case to the discretion of the parole authority, it set forth certain situations in which there is "presumptively" a right to counsel. ██ Such a right exists where the parolee denies that he committed the violations and where, even though he does not contest the existence of the violation, he asserts complex matters in mitigation. (*Gagnon* v. *Scarpelli, supra,* 411 U.S. 778, 790 [36 L.Ed.2d 656, 666].) The court further indicated that when, as in *Gagnon,* the parolee admitted to the violation but asserted that the admission was coerced, the counsel question should be seriously considered.

The instant case presents the very type of situation in which the Supreme Court has indicated that counsel should be "presumptively" appointed.[6] Petitioner's right to relief under *Gagnon,* however, is dependent on whether

---

[6]Petitioner has denied the commission of the alleged violations. He has attempted to cross-examine adverse witnesses and obtain relevant documents. He has attempted to present a defense and has tried to obtain witnesses who would testify in his favor.

that decision applies retroactively to hearings held prior to its effective date.[7]

■ We have concluded for reasons stated below that the rule enunciated in *Gagnon* should be given application only to hearings conducted after the effective date of that opinion.

■ Recent cases in both the United States Supreme Court and this court have developed three criteria for determining whether a newly enunciated constitutional rule should be given retroactive or only prospective application. (See *Halliday* v. *United States* (1969) 394 U.S. 831 [23 L.Ed. 2d 16, 89 S.Ct. 1498]; *McCarthy* v. *United States* (1969) 394 U.S. 459 [22 L.Ed.2d 418, 89 S.Ct. 1166]; *Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].) In *Halliday* these criteria were summarized as follows: "(1) the purpose of the new rule; (2) the extent of reliance upon the old rule; and (3) the effect retroactive application would have upon the administration of justice." (*Halliday* v. *United States, supra,* 394 U.S. 831, 832 [23 L.Ed.2d 16, 19].)[8]

The purpose of the right-to-counsel rule was clearly stated in *Gagnon:* ". . . the effectiveness of the rights guaranteed ·in *Morrissey* may in some circumstances depend on the use of skills which the probationer or parolee is unlikely to possess." (*Gagnon* v. *Scarpelli, supra,* 411 U.S. 778, 786 [36 L.Ed.2d 656, 664].) Thus the Supreme Court had clearly indicated that the rule in *Gagnon* was enunciated in order to insure, in particular cases, the rights mandated by *Morrissey.* As *Morrissey* itself is only applicable to "future revocations of parole" (*Morrissey* v. *Brewer, supra,* 408

---

[7]*Gagnon* was decided on May 14, 1973. The formal revocation hearing in the instant case was held on April 5, 1973.

[8]It can be argued that since *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733], which recognized a constitutional right to counsel at all criminal trials, was held to be fully retroactive (*In re Woods* (1966) 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913]) all cases wherein a right to counsel is first recognized have a per se retroactive effect. However, cases subsequent to *Gideon* and *Woods* have clearly indicated that new rules affording a right to counsel are not to be treated in a different manner for purposes of retroactivity, than any other newly enunciated constitutional rule. (See *Johnson* v. *New Jersey* (1966) 384 U.S. 719, 727-729 [16 L.Ed.2d 882, 888-890, 86 S.Ct. 1772].) A case in point is *Coleman* v. *Alabama* (1970) 399 U.S. 1 [26 L.Ed.2d 387, 90 S.Ct. 1999], wherein the Supreme Court held for the first time that there was a constitutional right to counsel at a preliminary hearing. However, in *Adams* v. *Illinois* (1972) 405 U.S. 278 [31 L.Ed.2d 202, 92 S.Ct. 916], the court held that *Coleman* was to be given application only to those preliminary hearings conducted after the date of the *Coleman* decision. The *Adams* court applied the retroactivity analyses we apply here. (See also *In re Harris* (1967) 67 Cal.2d 876 [64 Cal.Rptr. 319, 434 P.2d 615].) It is thus clear that not all constitutional rules involving the right to counsel are entitled to retroactive effect and, in fact, it is only the right to counsel *at criminal trials* which has been afforded full retroactive application.

U.S. 471, 490 [33 L.Ed.2d 484, 499]) at most *Gagnon* would be retroactive to the effective date of *Morrissey* in order to effectuate the *Morrissey* purpose. However, the fact that *Gagnon* implements *Morrissey* does not *ipso facto* require that it be given retroactive effect to the date of *Morrissey* (June 29, 1972). The *Gagnon* court recognized that the insertion of counsel would "alter significantly the nature of the proceeding" resulting in prolongation of hearings, more extensive records, and increased financial cost to the state. (*Gagnon* v. *Scarpelli, supra,* 411 U.S. 778, 787-788 [36 L.Ed.2d 656, 664-665].) Most importantly, the necessity of counsel, under *Gagnon,* is to be determined on a case-by-case basis which is an implicit recognition that not all hearings would be benefited from the introduction of counsel. Further, it is clear that the purpose of the new rule set out in *Gagnon* was to implement and enhance the protections afforded for the first time in *Morrissey.* ▮ As the Supreme Court itself has recently indicated, "the fact that a new rule tends incidentally to improve or enhance reliability does not in itself mandate the rule's retroactive application . . . [R]etroactivity is not required by a determination that the old standard was not the most effective vehicle for ascertaining the truth, or that the truth-determining process has been aided somewhat by the new standard . . . ." (*Gosa* v. *Mayden* (1973) 413 U.S. 665, 680 [37 L.Ed.2d 873, 887-888, 93 S.Ct. 2926]; see also *Johnson* v. *New Jersey, supra,* 384 U.S. 719.) Thus the purpose of the new rule and its effect in enhancing the fact-finding process do not, by themselves, require its retroactive application.

The other criteria even more clearly require a determination that *Gagnon* not be given retroactive effect. Prior to *Gagnon* there was no due process or other right to counsel at parole revocation hearings. (*In re Tucker, supra,* 5 Cal.3d 171, 176.) Although *Morrissey* implicitly undermined other holdings in *Tucker* it did not reach the counsel question and in that respect left *Tucker* in full force and effect. We conclude that the Authority justifiably relied on the existing rule in this state at the time of the hearing and cannot be held to a duty to have foreseen the nature of the subsequent resolution of the counsel question in *Gagnon.*

Finally, a retroactive application of *Gagnon,* even to the date of *Morrissey,* would have a far-reaching and adverse effect on the administration of justice. *Morrissey* attempted to set out the minimal due process required to insure a fair hearing. To this end the court set forth an elaborate and fairly extensive procedural scheme. We take notice of the fact that the Authority has undertaken to revise its procedures to comport with the *Morrissey* requirements. To conclude now that all pre-*Gagnon* hearings which complied with *Morrissey* must be readjudicated, when those very

hearings were held in conformance with the procedures the Supreme Court had stated were sufficient to insure a constitutionally fair and adequate hearing, would unnecessarily nullify hundreds of revocations.[9]

Although petitioner is not entitled to a new revocation hearing on the ground that counsel was not permitted to participate in a representative capacity at the first revocation hearing, petitioner is nevertheless entitled to a new hearing on the ground that the Authority failed' to make a full disclosure of matters of record.[10] Such a hearing, of course, will necessarily be had after *Gagnon's* critical date. As we have suggested, *Gagnon* may require that petitioner be represented at the hearing, depending on the criteria set out therein and the circumstances as presented to the Authority at the time of the hearing. Petitioner contends, however, that he is absolutely entitled to representation as a matter of due process afforded under our state Constitution (Cal. Const., art I, § 13). (See *In re William M.* (1970) 3 Cal.3d 16, 23-24 [89 Cal.Rptr. 33, 473 P.2d 737].)

In the instant case we deal with rights mandated by the United States Supreme Court based upon its construction of federal due process requirements. We recognize, as we must, the limits of those rights as enunciated by the high court. Petitioner seeks nevertheless to give such rights even greater effect by construction of parallel provisions of our state Constitution. Our Constitution is, of course, a separate and independent source upon which decisions might be grounded. (See *California* v. *Krivda* (1972) 409 U.S. 33 [34 L.Ed.2d 45, 93 S.Ct. 32]; *People* v. *Triggs* (1973) 8 Cal.3d 884, 891-892, fn. 5 [106 Cal.Rptr. 408, 506 P.2d 232]; *People* v. *Henderson* (1963) 60 Cal.2d 482, 495-497 [35 Cal.Rptr. 77, 386 P.2d 677]; Falk, *The State Constitution: A More Than "Adequate" Nonfederal Ground* (1973) 61 Cal.L.Rev. 273.)

Unlike the absolute right of counsel mandated by specific provisions of both the federal and state Constitutions for individuals accused of criminal offenses, the right of counsel in parole revocation proceedings exists only if, upon the balancing in each case of all relevant factors, the scales are tipped to require representation. The absolute right cannot be deemed to exist merely because in some or perhaps many instances the circumstances

---

[9]According to statistics of the Department of Corrections more than 1,000 revocation hearings would potentially have to be reheard. The impact of such a large addition to the Authority's normal workload would indeed be severe.

[10]Petitioner does not specifically urge as a ground for a new hearing the fact that Officer Hurst, although requested to do so by petitioner, did not appear as a witness for questioning at the prerevocation hearing. (See *Morrissey* v. *Brewer, supra,* 408 U.S. 471, 487 [33 L.Ed.2d 484, 497-498].)

are such that fairness requires that the parolee be represented by an attorney. Due process is satisfied by a rule as in *Gagnon* which mandates representation only in those particular instances where the scales are tipped in the parolee's favor.[11] Petitioner asks, in effect, that under our state Constitution we determine on the record before us that this balancing process will necessarily require counsel in every instance. We conclude, however, that the record cannot support such a determination.

*Morrissey* and *Gagnon* have rendered inoperative substantial portions of our opinion in the case of *In re Tucker, supra*, 5 Cal.3d 171, but the majority views expressed therein relative to an *absolute* right of counsel at parole revocation hearings have not been rendered entirely nugatory. The dissenters, whose views in other respects anticipated later holdings in *Morrissey* and *Gagnon*, urged in that case that each parolee must, as a matter of due process, be represented by counsel at parole revocation hearings. The majority stated that it was undeniable that under certain circumstances counsel could assist a parolee, but noted, inter alia, that parole revocation proceedings are rehabilitative in nature, that the Authority is vested with broad discretion in effecting rehabilitation, and that parole revocation proceedings are designed to be informally conducted. It was further noted that representation by counsel in each instance would pose excessive administrative burdens upon the Authority and the proceedings themselves, that the demands on experienced counsel would be enormous and far exceed availability, and that the People, who have not been and are not now represented by counsel at parole revocations, would necessarily be required to arrange for representation by counsel, thus compounding the demands on the legal profession. (*Id.* at pp. 178-180, see also concurring opinion by Mosk, J., pp. 180-184.) All of the expressed reasons for rejecting the demands of an absolute right to counsel continue to be valid.

Although we have been concerned with the absolute right of counsel in light of our state Constitution, we are of the opinion that Mr. Justice Powell in speaking for the Supreme Court in *Gagnon* expressed a criterion which is equally applicable under both federal and state constitutional requirements. He stated: "We thus find no justification for a new inflexible constitutional rule with respect to the requirement of counsel. We think,

---

[11] " 'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. . . . Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account." (*Hannah* v. *Larche* (1960) 363 U.S. 420, 442 [4 L.Ed.2d 1307, 1321, 80 S.Ct. 1502].)

rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with . . . administering the . . . parole system. Although the presence and participation of counsel will probably be both undersirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent . . . parolees." (*Gagnon* v. *Scarpelli, supra,* 411 U.S. 778, 790 [36 L.Ed.2d 656, 666].)

We are persuaded, as we were before, that on balance there is no federal or state constitutional compulsion which requires that in each instance of parole revocation the parolee be represented by counsel at the hearing thereon. We are unable to construe our state Constitution as compelling that a parolee be represented by counsel beyond the compulsion enunciated in *Gagnon.* We thus reject petitioner's contention that he is absolutely entitled to representation by virtue of local constitutional provisions.

We are cognizant of the fact that the lack of "precise and detailed" guidelines in *Gagnon* render it a difficult standard to apply but we have every expectation that the Authority will interpret the mandate of the high court and this court in a reasonable fashion.

The Authority is directed to provide petitioner within 30 days of the finality of this opinion a new revocation hearing conforming to the views expressed herein. Petitioner is not entitled to his release pending such hearing.

Except to the extent that the relief prayed for has been accorded to petitioner the petition for the writ of habeas corpus is denied and the order to show cause is discharged.

McComb, J., Tobriner, J., Mosk, J., Burke, J., Sullivan, J., and Clark, J., concurred.