Opinion
 

 ORTEGA, J.
 

 In 1994, the juvenile court committed Michael I. to the California Youth Authority (CYA). In March 1997, Michael hired Attorney Mark McDonald to help him prepare for his upcoming annual review which would determine if he would be released on parole. CYA wards are not absolutely entitled to have counsel present at such hearings, but they can hire counsel to help prepare for such hearings.
 

 Despite McDonald’s repeated efforts, CYA did not permit McDonald to meet with Michael until the afternoon before the review hearing, and did not make Michael’s file available for McDonald’s review until a month after the hearing. At his hearing, the Youthful Offender Parole Board (YOPB) denied Michael parole and extended his period of confinement an additional month, based on failures to complete ordered programs and assaultive disciplinary violations. YOPB denied Michael’s administrative appeal.
 

 Michael petitioned for habeas corpus, seeking release from custody or a new hearing with adequate time to consult with McDonald beforehand with a copy of his file. Michael concedes he is not entitled to counsel’s assistance at the hearing, but argues due process requires adequate opportunity to consult with his lawyer before the hearing and timely prehearing access to his file for himself and McDonald. We issued an order to show cause.
 

 Because the hearing evidence supports YOPB’s decision to deny Michael’s release and extend his confinement time, we do not order his release. However, we agree he is entitled to a new hearing preceded by adequate opportunity to consult with McDonald with both having access to his file. We issue the writ and order YOPB to vacate its denial of Michael’s release and extension of his confinement period, and hold a new hearing preceded by these safeguards.
 

 Facts and Procedural History
 

 Michael was found to be a delinquent ward on May 27, 1993, and committed to camp community placement. On July 21, 1994, the juvenile court sustained supplemental petition allegations that Michael possessed drugs and drug paraphernalia, committed petty theft, failed to obey his
 
 *465
 
 parents, and admitted to using marijuana and methamphetamine, all in violation of his earlier probationary conditions. The juvenile court committed Michael to CYA.
 

 Michael repeatedly failed to complete drug, gang, and violence counseling programs and committed a series of assaults. Michael was transferred to El Paso de Robles School in April 1995, and transferred to the Herman G. Stark Youth Training School in Chino in May 1996. At a March 13, 1997, hearing, the validity of which is not before us, YOPB found Michael possessed weapons on November 5, 1996, and January 7, 1997.
 

 A March 13, 1997, case report was prepared for Michael’s upcoming April 1997 annual review. The report narrated Michael’s failure to complete the drug, gang, and victim impact programs to which he had been assigned, failure to complete any remaining high school graduation requirements, repeated disciplinary violations involving weapons, assaults, and drugs, his avowed Nazism, and membership in a White supremacist gang. Michael had repeatedly failed in various placements and had been transferred. The report recommended against parole. This report formed the basis for the challenged YOPB decision to deny parole and extend Michael’s commitment time by a month.
 

 Michael was present at his previous, April 1996, annual review. On March 24, 1997, Michael’s mother hired McDonald to help Michael prepare for his upcoming April 1997 annual review.
 
 [1]
 
 On April 2, McDonald’s office telephoned CYA. In response to McDonald’s inquiries, CYA told him Michael’s annual review hearing date had not been set, wards generally received 24 hours’ notice of their hearings, wards’ parents and attorneys are allowed to attend such hearings, a copy of the current inmate’s handbook which detailed hearing procedures was unavailable because it was being revised, and requests to view an inmate’s file must be written. In fact, CYA’s ward handbook states that wards are entitled to (1) five days’ hearing notice and (2) view their files without written requests. The handbook also provides that parents or guardians, but not attorneys, for wards such as Michael who are over 18 years old, must submit written requests to see a ward’s file. Unbeknownst to McDonald, sometime between April 2 and April 6, CYA told Michael his annual review was scheduled for April 18. McDonald did not learn of this communication until nearly a month after the April 18 annual review. Michael was in solitary confinement from the first of the year until his hearing, and unable to send or receive telephone calls and mail. CYA did not seek to obtain Michael’s written consent for McDonald to view Michael’s file until April 17.
 

 
 *466
 
 After two days of repeated requests, on April 4, CYA provided McDonald a fax number for receipt of a written file view request. About 5:30 p.m. on April 4, a Friday, McDonald faxed a written request to see Michael’s file on April 8. On April 7, CYA telephoned McDonald and told him he could not view Michael’s file on April 8 because there was insufficient time to obtain Michael’s written release and remove any privileged material. CYA also told McDonald Michael’s annual review had not yet been scheduled.
 

 On April 10, CYA contacted McDonald and scheduled April 18 for McDonald to view Michael’s file. On April 10 and April 14, CYA told McDonald Michael’s annual review was not yet scheduled. On April 17, CYA contacted McDonald and told him he would not be permitted to view Michael’s file, because the board needed to review it, and that Michael’s annual review was scheduled for noon the next day, April 18.
 

 McDonald went to CYA on the afternoon of April 17 and was permitted a “brief’ meeting with Michael. McDonald returned on the morning of April 18 but was denied any further chance to meet with Michael, although he did meet with Michael’s mother and CYA staff.
 

 The hearing was held about 1 p.m. on April 18. McDonald was not present. At the hearing, as discussed above, YOPB denied Michael parole and extended his confinement time one month. As a result, Michael will not be eligible for release until September 14, 1998, when he will have exhausted his custody time and otherwise would be entitled to discharge. McDonald was unable to see Michael’s file until May 12. Michael administratively appealed the hearing decision on September 19. On October 20, YOPB denied the appeal. Michael filed this writ petition on November 6. After considering CYA/YOPB’s December 18 return and Michael’s December 31 reply, we issued the order to show cause on January 9, 1998, for March 25, 1998. The parties timely submitted their supplemental return and reply.
 
 [2]
 

 Discussion
 

 Michael’s challenged annual review was pursuant to Welfare and Institutions Code section 1720, subdivision (b): “The [Youthful Offender Parole] board shall periodically review the case of each ward for the purpose of
 
 *467
 
 determining whether existing orders and dispositions in individual cases should be modified or continued in force. These reviews shall be made as frequently as the board considers desirable and shall be made with respect to each ward at intervals not exceeding one year.”
 

 We cannot reverse a CYA decision regarding a ward “unless it appears CYA has failed to comply with law or has abused its discretion in dealing with a ward in its custody.”
 
 (In re Owen E.
 
 (1979) 23 Cal.3d 398, 406 [154 Cal.Rptr. 204, 592 P.2d 720] [reversing juvenile court’s order paroling a ward after CYA denied parole].)
 

 “In order to achieve its treatment, rehabilitative goal, [CYA] has wide latitude, broad discretionary powers in the treatment and discharge of persons committed to it, including instant status reexaminations. [Citations.]”
 
 (In re Robert D.
 
 (1979) 95 Cal.App.3d 767, 775 [157 Cal.Rptr. 339].)
 

 We begin by disposing of several nonissues to which CYA/YOPB devotes most of its returns. First, Michael does not contend he is absolutely entitled to have McDonald present at his hearing, and does not ask us to so order. (See 1 Cal. Juvenile Court Practice, Delinquent Minors (Cont.Ed.Bar 1981) Youth Authority, § 10.26, p. 298 [attorney not permitted to be present at board hearing setting initial parole eligibility date].) Second, Michael does not claim the evidence presented at the challenged annual review was insufficient to support YOPB’s decision to deny him parole and extend his commitment time, nor does he ask us to violate the established rules limiting our review of that decision by ignoring or reweighing that evidence. Given these concessions, as noted in the introduction, we reject without further discussion Michael’s request that we order his immediate release.
 

 Although a decision to deny parole “is not a part of the criminal prosecution, ... the loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process.”
 
 (Gagnon
 
 v.
 
 Scarpelli
 
 (1973) 411 U.S. 778, 781 [93 S.Ct. 1756, 1759, 36 L.Ed.2d 656], relying on
 
 Morrissey
 
 v.
 
 Brewer
 
 (1972) 408 U.S. 471 [92 S.Ct. 2593, 33 L.Ed.2d 484].)
 
 Gagnon
 
 held that although there was no absolute constitutional right to counsel at parole revocation hearings, “. . . the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the
 
 *468
 
 State provide at its expense counsel for indigent probationers or parolees.”
 
 (Gagnon
 
 v.
 
 Scarpelli, supra,
 
 411 U.S. at p. 790 [93 S.Ct. at p. 1763].)
 

 In re Love
 
 (1974) 11 Cal.3d 179 [113 Cal.Rptr. 89, 520 P.2d 713] applied
 
 Gagnon
 
 and held it was a denial of due process to withhold from a parolee nonprivileged portions of the report outlining the bases for a recommendation to deny parole.
 
 Love
 
 also held that while there was no absolute right to counsel at such hearings, “[s]uch a right exists where the parolee denies that he committed the violations and where, even though he does not contest the existence of the violation, he asserts complex matters in mitigation.
 
 (Gagnon
 
 v.
 
 Scarpelli, supra,
 
 411 U.S. 778, 790 . . . .) The court further indicated that when, as in
 
 Gagnon,
 
 the parolee admitted to the violation but asserted that the admission was coerced, the counsel question should be seriously considered.”
 
 (In re Love, supra,
 
 11 Cal.3d at p. 186; see
 
 People
 
 v.
 
 Ojeda
 
 (1986) 186 Cal.App.3d 302, 306-308 [230 Cal.Rptr. 609] [no absolute right to counsel at parole revocation hearing, reversing contrary trial court ruling; remanded for prison authorities to consider if counsel is required in particular case].)
 

 As noted above, Michael does not demand that McDonald be permitted to be present at his annual review. Likewise, he does not demand that the state provide him appointed counsel to prepare him for or be present at such hearings. Thus, those issues are not before us. However, if due process is to mean anything, CYA cannot deliberately structure procedures which prevent counsel retained at a ward’s expense from reviewing the ward’s file and consulting with the ward before such a hearing. Here, CYA frustrated all of McDonald’s reasonable and timely attempts to review Michael’s file and arrange for a prehearing meeting so he and Michael could review its contents, discuss challenges thereto, if any, explore possible mitigating evidence, and arrange to present such challenges and evidence to the board. A “brief’ meeting less than 24 hours before the hearing, without access to the file that outlined the recommendation and its factual support, renders Michael’s retention of counsel worthless. CYA does not dispute Michael’s factual claims; in fact, it concedes that such snafus are quite possible. Moreover,' one of the factors discussed above in determining whether counsel should be permitted to be present at the review is whether Michael planned to contest the allegations, present complex mitigating evidence, or claim any admissions were coerced. Without the ability to review his file and discuss its contents and any response with his lawyer, Michael and CYA could not know whether he would be entitled to McDonald’s presence.
 

 Despite its printed and stated policy of permitting counsel to be present, and to review a ward’s file, CYA deliberately frustrated repeated, Herculean
 
 *469
 
 efforts by McDonald to do so. As such, Michael is entitled to a new review preceded by adequate time to meet with McDonald and review his file. Because of CYA’s history of frustrating reasonable attempts to do so before the earlier review, and the short time remaining before Michael will be required to be released, we order YOPB to schedule the new review within 30 days of the date of this opinion. YOPB and/or CYA must make Michael’s file available to McDonald at least 20 days before the hearing, and CYA must allow McDonald to meet with Michael at least 10 days before the hearing. (See
 
 In re La Croix
 
 (1974) 12 Cal.3d 146, 155, fn. 7 [115 Cal.Rptr. 344, 524 P.2d 816] [on habeas corpus petition, court may order correctional authorities who have failed to provide a required hearing to do so “timely[.]”]; 6 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Extraordinary Writs, § 3359, p. 4168.)
 

 Disposition
 

 We issue the writ, order YOPB to vacate the April 18, 1997, annual review, and to schedule a new review within 30 days of the date of this opinion. YOPB and/or CYA must make Michael’s file available to McDonald at least 20 days before the new hearing. CYA must permit Michael and McDonald to meet at least 10 days before the new hearing.
 

 This opinion to become final forthwith.
 

 Spencer, P. J., and Vogel (Miriam A.), J., concurred.
 

 A petition for a rehearing was denied May 12, 1998.
 

 [1]
 

 Unless otherwise noted, all further dates refer to 1997.
 

 [2]
 

 On November 13, we requested CYA/YOPB file any opposition by November 24. On December 4, we granted CYA/YOPB’s request that time to file its opposition be extended until December 18, when CYA/YOPB filed its return. In his December 31 reply, Michael objected to CYA/YOPB’s delay, noting that delay could result in Michael serving his entire commitment period even if we found his claim meritorious. Despite this chronology, in its February 2, 1998, supplemental return, CYA/YOPB incorrectly stated that the December 18, 1997, response date was “the first request to respond that was received by counsel for Respondent.”