Filed 11/18/20  P. v. Watkins CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B299603 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 9PH03913) |
| v. | |
| EDWARD GENE WATKINS, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Keith Borjon, Judge.  Affirmed.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Heidi Salerno, Deputy Attorney General for Plaintiff and Respondent.

Edward Gene Watkins appeals from an order revoking and reinstating his parole upon completion of a 180-day jail sentence after the court found at a combined probable cause/parole revocation hearing that Watkins had violated a condition of his parole by failing to wear a GPS (Global Positioning System) monitoring device. Watkins contends his appointed counsel provided ineffective assistance by failing to request a continuance after the People successfully amended the petition to revoke at the start of the hearing to add the allegation regarding the monitoring device. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Watkins's Parole*

On May 31, 2019 Watkins reported to his parole officer following his release from county jail the previous day. He signed a set of parole conditions, including numbers 4, "You shall not engage in conduct prohibited by law"; 68, "You shall participate in continuous electronic monitoring, GPS technology"; and 74, "You shall not tamper with the device or cover the device with any material that you know or reasonably should know, will interfere with the GPS system." Watkins was advised in writing that a violation of any of the conditions of parole "may result in parole revocation with or without a criminal conviction."[1]

---

[1] According to the People's petition for revocation, Watkins had been convicted of indecent exposure in July 2017 and sentenced to three years in prison. He was released on parole in November 2018 and reincarcerated in county jail soon after for violating parole.

2. *Watkins's Arrest for Indecent Exposure*

On June 1, 2019 Watkins was arrested for indecent exposure after a witness observed him walking naked on a highway in Lancaster.

3. *The People's Petition To Revoke Watkins's Parole and the Combined Probable Cause/Probation Revocation Hearing*

On June 7, 2019 the Department of Corrections and Rehabilitation, Division of Adult Parole Operations (the People) filed a petition for revocation of parole alleging Watkins had violated his parole by committing an indecent exposure offense. Watkins denied the allegation at his arraignment on June 14, 2019.  His motion to dismiss his appointed counsel was denied the same day following a *Marsden* hearing,[2] and the court set a probable cause hearing for June 21, 2019.

On June 21, 2019 the People and defense counsel stipulated to holding a combined probable cause/parole revocation hearing. The People also moved, without a defense counsel objection, to amend the petition to add an allegation that Watkins had violated his parole by tampering with his electronic ankle monitor (Pen. Code, § 3010.10) and to dismiss the indecent exposure allegation in the interest of justice.  The court granted both requests.

Watkins denied the new allegation and told the court that, despite his counsel's wishes, he did not want to go forward with the hearing on the new allegation that day:  "I don't know nothing about no ankle bracelet.  At first it was indecent exposure.  Now it's ankle bracelet.  I'm trying to put it off 'til,

---

[2]     *People v. Marsden* (1970) 2 Cal.3d 118.

3

like, you know, next week." The court told Watkins, "Your attorney has decided to proceed with this hearing. So she gets to overrule you on that. You don't have a choice on that." After a short delay in the proceedings to allow Watkins to compose himself, Watkins asked one more time for permission to address the court directly. The court agreed, and Watkins stated, "I was willing to prove that charge [indecent exposure] innocent. Now all of a sudden they're dropping. It's another one I knew nothing about. So I was, like, 'Let's get time to get prepared for this next week. It's all in the same day. It's too sudden for me.' And she's [his counsel] like, 'No, you can't.'" The court told Watkins his counsel was ready and the hearing would proceed.

According to the evidence presented at the hearing, a little after 4:00 p.m. on May 31, 2019 Watkins arrived at the office of his parole agent to be fitted with the GPS monitor on his ankle. At 10:56 p.m. the same day, Watkins's ankle monitor "went into master tamper," indicating the device had been removed. A short time later, in the early hours of June 1, 2019, a witness reported to the Los Angeles County Sheriff's Department in Lancaster that he had seen Watkins on the road. Watkins was naked. Sheriff's deputies testified they found Watkins's ankle monitor on the ground 20 yards from where the witness had seen Watkins. Sheriff's deputies located Watkins and arrested him.

Watkins testified at the hearing in his own defense. He stated he did not remove his ankle monitor. He could not figure out how his ankle monitor had been removed, if it had been removed at all, and believed he was being "set up" to violate his parole. His counsel argued in closing that, having undertaken the effort to make his parole appointment to be fitted with the

4

monitor, it made no sense that Watkins would remove the monitor only a few hours later.

At the end of the hearing the court stated, "I'm sure Mr. Watkins believes he had his ankle bracelet on—his ankle monitor on. However, I'm crediting the testimony of [his parole agent] as well as [the deputies who arrested him] and find both probable cause and by a preponderance of the evidence that you're in violation of the terms and conditions of your release to community supervision. In particular, a master tamper allegation, [Penal Code section] 3010.10, allegation, failure to participate in GPS monitoring and supervision." The court revoked Watkins's parole and ordered that it be reinstated on the condition Watkins serve 180 days in county jail.[3]

## DISCUSSION

1. *Governing Law and Standard of Review*

The right to counsel at a parole revocation hearing, when it exists at all, derives not from the Sixth Amendment guarantee, which does not apply to parole proceedings, but as a matter of due process. (See *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 790

---

[3] Although Watkins has completed the 180-day jail sentence, he remains on parole for his July 2017 offense. Because there continue to be consequences to Watkins that flow from the court's revocation order—the extension of his time on parole—his appeal is not moot. (See Pen. Code, § 3000, subd. (b)(6) ["Time during which parole is suspended because the prisoner . . . has been returned to custody as a parole violator shall not be credited toward any period of parole unless the prisoner is found not guilty of the parole violation"]; cf. *People v. DeLeon* (2017) 3 Cal.5th 640, 645-646 [appeal from a parole reovcation order is moot where the defendant has served his time and is no longer under parole supervision].)

5

[although there is no absolute constitutional right to counsel at parole revocation hearings, "the decision as to the need for counsel must be made on a case-by-case basis"; sometimes "fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees"].)  The California Supreme Court has held a due process right to counsel should be presumed at a parole revocation hearing when, as here, the parolee contests the violation occurred.  (*In re Love* (1974) 11 Cal.3d 179, 186; accord, *People v. Ojeda* (1986) 186 Cal.App.3d 302, 307-308.)

When the right to appointed counsel is constitutionally required as a matter of federal due process, it includes the right to effective assistance of counsel.  (See *In re Sanders* (1999) 21 Cal.4th 697, 715 [due process right to appointment of attorney on the first appeal as a matter of right also entitles appellant to "constitutionally effective legal assistance"].)  Under those circumstances, the question whether counsel provided constitutionally inadequate assistance for due process purposes is evaluated under the same standard applied in Sixth Amendment right-to-counsel cases as stated in *Strickland v. Washington* (1984) 466 U.S. 668, 687-688.  (See *Smith v. Robbins* (2000) 528 U.S. 259, 285 [*Strickland* test applies to Fourteenth Amendment due process right to effective appellate counsel]; *In re Reno* (2012) 55 Cal.4th 428, 493 [same].)  That is, to prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate his counsel's performance was legally deficient— there was no rational tactical purpose for counsel's decision—and that it is reasonably probable that, but for that deficiency, the defendant would have received a more favorable outcome.

(*People v. Rices* (2017) 4 Cal.5th 49, 80; *People v. Mickel* (2016) 2 Cal.5th 181, 198; see *Strickland*, at p. 687.)

"On direct appeal, if the record "'sheds no light on why counsel acted or failed to act in the manner challenged,'" we must reject the claim "'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.'"" (*People v. Caro* (2019) 7 Cal.5th 463, 488; accord, *People v. Mickel, supra*, 2 Cal.5th at p. 198 ["a reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ""no rational tactical purpose"" for an action or omission"].) Thus, "except in those rare instances where there is no conceivable tactical purpose for counsel's actions, claims of ineffective assistance of counsel should be raised on habeas corpus, not on direct appeal." (*People v. Lopez* (2008) 42 Cal.4th 960, 972; accord, *People v. Sepulveda* (2020) 47 Cal.App.5th 291, 301.)

### 2. *Watkins Has Not Demonstrated His Counsel Was Constitutionally Ineffective*

Watkins contends, and the People do not dispute, he had a federal due process right to the effective assistance of counsel at his parole hearing. Assuming he did, Watkins has not demonstrated his counsel's performance at the hearing was legally deficient. While the record is clear Watkins wanted a one-week continuance, it is silent as to the reason his counsel did not request one. It is conceivable that delay was unnecessary, as the issue required little preparation: Watkins insisted he had not removed, and could not explain what had happened, to his GPS device; and the People asserted it had been removed and found near the location Watkins was last seen. In addition, Watkins

7

does not suggest, and the record does not reveal, what, if anything, would have been gained by a week's continuance. Accordingly, even if Watkins's counsel had performed below the standard of care by failing to request a continuance, a proposition not affirmatively demonstrated by the record on appeal, nothing in this record remotely suggests the decision to go forward with the hearing was prejudicial.

## DISPOSITION

The order revoking and reinstating Watkins's parole on the condition he serve 180-days in jail is affirmed.


PERLUSS, P. J

We concur:


SEGAL, J.


FEUER, J.

8