Filed 8/14/23  P. v. Seaholm CA4/2
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074875 |
| v. | (Super.Ct.No. BPR2000051) |
| CAMERON CHARLES SEAHOLM, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Judith M. Fouladi, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Cameron Charles Seaholm, in pro. per.; Joseph L. Ryan and Anna M. Jauregui-Law, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

In December 1989, following a conviction for first degree murder (Pen. Code,[1] § 187), defendant and appellant Cameron Charles Seaholm was sentenced to 25 years to life in prison and was paroled in July 2017.  In February 2020, following a parole revocation hearing, defendant's parole was revoked for admitting to using methamphetamines and failing to complete a substance abuse treatment program. Defendant appealed, and appointed counsel filed an opening brief that set forth the relevant procedural history of the case and asked this court to undertake an independent review of the record to determine whether any arguable issues on appeal exist under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*).  By order filed December 16, 2020, we dismissed that appeal as abandoned because defendant had declined to file a supplemental brief, and we declined to undertake an independent review of the record because such review is required only in the first appeal of right from a criminal conviction.

Our Supreme Court granted defendant's petition for review and later transferred the matter back to this court with directions to vacate our decision and reconsider whether to exercise our discretion to conduct an independent review of the record or provide any other relief in light of *People v. Delgadillo* (2022) 14 Cal.5th 216, 232-233 and footnote 6 (*Delgadillo*).  We vacated our decision on May 30, 2023, and allowed the

---

[1] All future statutory references are to the Penal Code.

parties to file supplemental briefs limited to matters arising after the previous decision in this case. On this same date, we notified defendant that (1) counsel had filed a brief indicating that no arguable issues had been identified by counsel; (2) as a case arising from an order denying postconviction relief, defendant was not entitled to an independent review of the record; and (3) in accordance with the procedures set forth in *Delgadillo*, defendant had 30 days in which to file a supplemental brief raising any argument he wanted this court to consider. In addition, we notified defendant that failure to timely file a supplemental brief may result in the dismissal of the appeal as abandoned.

All parties, including defendant and the People, have filed a supplemental brief. Based on our independent review of the record for potential error and considering defendant's personal supplemental brief in support of his appeal, we find no meritorious issues and affirm the trial court's order revoking defendant's parole.

II.

FACTUAL AND PROCEDURAL BACKGROUND

On December 7, 1989, following his conviction for first degree murder, defendant was sentenced to 25 years to life in prison. He was paroled on July 25, 2017.

On July 16, 2019, defendant signed a special condition of parole requiring him to "'enroll in and successfully complete a substance abuse treatment program as directed by [his] parole agent.'"

On September 30, 2019, defendant's parole agent instructed defendant to enroll in and complete the Palm Desert Recovery Center Sober Living Home (Recovery Center).

3

On January 7, 2020, defendant's parole agent was informed that defendant had been removed from the Recovery Center after defendant tested positive for methamphetamines and amphetamines on December 26 and December 29, 2019. Defendant was thereafter arrested.

On January 8, 2020, defendant signed a voluntary statement of admission (exhibit No. 1) stating he had used methamphetamine on December 26 and amphetamine on December 29, 2019.

On January 14, 2020, a petition to revoke defendant's parole was filed. The petition alleged that defendant failed to complete a substance abuse treatment program and that defendant admitted to using amphetamines and methamphetamines. The petition noted that defendant had stabbed the victim in the back and neck, causing her death, and that he was under the influence of cocaine during the commission of his commitment offense.

A combined probable cause/parole revocation hearing was held on February 11, 2020. At that time, Matthew Carpenter, the director of operations for the Recovery Center, testified that defendant lived and took classes at the Recovery Center. Defendant also participated in the Day Reporting Center Program through the Cal State San Bernardino Reentry Initiative while residing at the Recovery Center. Every person living at the Recovery Center agrees to abide by certain rules and regulations, including that they cannot use any illicit substances. The Recovery Center utilizes an outside laboratory called Equaltox Laboratories (Equaltox) to test the urine/drug tests. The Recovery Center

4

obtains urine samples, seals them, and sends them to Equaltox so that they can create a lab report. In early January 2020, Equaltox alerted Carpenter that defendant had two positive tests for illicit substances on December 26 and 29, 2019.[2] Carpenter trusted Equaltox as a reliable company in the course of his business.

Nicholas Spadafino, the owner of the Recovery Center, testified that he was familiar with defendant, that defendant lived at his residential sober living facility, and that defendant was discharged from the facility for testing positive for methamphetamine and violating the facility's rules. Carpenter had informed Spadafino of two separate positive drug tests.

After receiving a report related to defendant, Spadafino contacted defendant's parole officer, Agent Daniel Lopez. After defendant violated the rules and regulations of the Recovery Center, Agent Lopez and other law enforcement officers removed defendant from the facility.

Agent Lopez, who was defendant's parole agent, testified that he had directed defendant to complete a 90-day drug program. Agent Lopez went to the Recovery Center on January 7, 2020, following a report that defendant had violated the terms of his parole by testing positive for methamphetamine. Defendant denied using methamphetamine at the time that he was arrested.

---

[2] The trial court sustained defense counsel's objection to the admission of defendant's lab tests. Accordingly, the lab reports (exhibit Nos. 2 and 3) were not admitted into evidence.

Agent Lopez identified a document (exhibit No. 1) completed by Agent Michael Berry.[3] The document is provided to parolees to voluntarily admit whether they had used a controlled, illegal substance. Agent Berry worked for parole inside the county jail. When Agent Berry went to serve defendant with documents, Agent Berry asked defendant whether he had used methamphetamine. Defendant responded in the affirmative. Agent Berry obtained a signed admission from defendant on January 8, 2020, that he had used methamphetamine/amphetamine on December 26 and 29, 2019.

Defendant did not present any witnesses. However, defense counsel attempted to discredit the testimonies of the People's witnesses. On cross-examination, defense counsel questioned Carpenter as to the drug testing method used at the Recovery Center and Carpenter's role in collecting the drug tests. Counsel also questioned Spadafino about the Recovery Center's methods of collecting drug test samples. Spadafino acknowledged that the Recovery Center did not have any written policies or procedures with respect to drug testing. Spadafino admitted that he was not involved in the actual taking of the drug test samples, but that he had worked with Equaltox for two or three years and trusted their work.

On cross-examination, Agent Lopez admitted that he was not present at the time defendant signed the admission form. Agent Lopez was not aware of any conversation between defendant and Agent Berry and whether defendant was wearing his glasses at the time he signed the admission form. Agent Lopez did not include the fact that

---

[3] The trial court admitted exhibit No. 1, defendant's signed voluntary admission form, into evidence.

6

defendant had denied using methamphetamine anywhere in his petition for revocation of parole. Agent Lopez acknowledged that in the revocation petition, he did not recommend "intermediate sanctions," such as day reporting or the STOP program, for defendant because defendant was under the influence at the time of his commitment offense and because he had recently had substance abuse issues. Agent Lopez explained that he did not recommend alternative sanctions because in September 2019 defendant had admitted to using methamphetamine and it appeared defendant had an ongoing problem with the use of methamphetamine. Agent Lopez, however, admitted that defendant had no prior sustained parole violations since he began parole in July 2017, and that defendant had participated in programs and followed Agent Lopez's directions. Agent Lopez further acknowledged that defendant was graded as a "low number 1," the lowest level, for possible recidivism and that the "Parole Violation Decision-Making Instrument" (PVDMI) recommended defendant receive "remedial sanctions" for the allegation.

Following argument, the trial court found probable cause and by a preponderance of evidence that defendant had violated the terms of his parole by not completing the substance abuse treatment program and voluntarily admitting to the use of amphetamines and methamphetamines. The court thereafter revoked defendant's parole and remanded defendant to the California Department of Corrections and Rehabilitation "for further consideration and evaluation with regard to the violation" under section 3000.08, subsection (h). Defendant thereafter made a statement to the court, apologizing to his support team, parole officer, his counsel, and the court for his mistakes. Defendant noted

7

that he was "weak right now" and "not working from a position of strength." He also stated that he understood the court's position and thanked the court for its time.

III.

DISCUSSION

In the supplemental brief, appointed appellate counsel argues that defendant is entitled to a full review of his matter under the procedures set forth in *Wende* and *Anders* regardless of whether defendant files a supplemental brief because (1) *Delgadillo* did not specifically foreclose *Wende* reviews pertaining to appeals from a contested revocation of parole, and (2) federal and state due process protections mandate full *Anders*/*Wende* procedures to appeals involving a contested parole violation hearing which is the first and only opportunity to raise a claim pertaining to that ruling.

In their supplemental brief, the People assert "because the procedures outlined in *Delgadillo* fully protect these defendants' due process rights, there is no basis for extending *Wende* in the manner requested by [appointed appellate counsel]." The People also argue that a defendant has no federal constitutional right to counsel in these types of cases, only during a criminal defendant's first appeal as a matter of right and that the procedures outlined in *Delgadillo* fully protect defendant's due process rights on appeal from a parole revocation hearing.

In his supplemental letter brief, defendant contends, without citation to authority, that his appointed counsel was ineffective because (1) counsel was overwhelmed, unprepared, and unavailable to meet or speak with him; (2) counsel never challenged the

8

validity of the toxicology lab reports; (3) counsel never called any witnesses to the stand he had asked him to call; (4) counsel never questioned the testing protocols used against him; (5) counsel never asked the court to dismiss the case as his arrest was illegal and he had never signed a release for his urine test results; and (6) the owner of the Recovery Center had no authority to contact law enforcement or his parole agent since he was in the sober living facility on his own will.

A. *Legal Background*

In *Wende*, our Supreme Court held that "Courts of Appeal must conduct a review of the entire record whenever appointed counsel submits a brief on direct appeal which raises no specific issues or describes the appeal as frivolous." (*Delgadillo*, *supra*, 14 Cal.5th at p. 221.) The *Wende* procedure applies "to the first appeal as of right and is compelled by the constitutional right to counsel under the Fourteenth Amendment of the United States Constitution." (*Delgadillo*, at p. 221.)

In *Delgadillo*, *supra*, 14 Cal.5th 216, the Supreme Court held that the *Wende* independent review procedure is not constitutionally required in an appeal from a postconviction order denying a section 1172.6 petition for resentencing because the denial does not implicate a defendant's constitutional right to counsel in a first appeal as of right. (*Delgadillo*, at pp. 222, 224-226; see *People v. Freeman* (2021) 61 Cal.App.5th 126, 134 [no right to *Wende* review of order finding violation of a condition of the defendant's postrelease community supervision commitment, as *Wende* review "was established to protect the federal constitutional right to the effective assistance of counsel

9

in a *direct appeal from a criminal conviction*" (italics added)].)  The court further found that general due process principles regarding fundamental fairness does not compel a *Wende* independent review of the order.  (*Delgadillo*, at pp. 229-232.)  However, the court explained that if a no-issues brief is filed in a section 1172.6 appeal and the defendant then "files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion." (*Delgadillo*, at p. 232.)  We are not required to conduct "an independent review of the entire record to identify unraised issues" but may do so at our discretion.  (*Ibid.*  ["While it is wholly within the court's discretion, the Court of Appeal is not barred from conducting its own independent review of the record in any individual section 1172.6 appeal."])

B.  *Analysis*

In this case, we need not decide whether the procedures set forth in *Delgadillo*, *supra*, 14 Cal.5th 219 apply to appeals from decisions to revoke a criminal defendant's parole or whether *Wende* procedures should be extended to appeals from a parole revocation hearing.  Defendant here has filed a supplemental brief, and we will address the arguments raised therein.

The right to counsel at a parole revocation hearing, when it exists at all, derives not from the Sixth Amendment guarantee, which does not apply to parole proceedings, but as a matter of due process.  (See *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 790 [although there is no absolute constitutional right to counsel at parole revocation

10

hearings, "the decision as to the need for counsel must be made on a case-by-case basis"; sometimes "fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees"].) The California Supreme Court has held a due process right to counsel should be presumed at a parole revocation hearing when the parolee contests the violation occurred. (*In re Love* (1974) 11 Cal.3d 179, 186.)

When the right to appointed counsel is constitutionally required as a matter of federal due process, it includes the right to effective assistance of counsel. (See *In re Sanders* (1999) 21 Cal.4th 697, 715 [due process right to appointment of attorney on the first appeal as a matter of right also entitles the defendant to "constitutionally effective legal assistance"].) Under those circumstances, the question whether counsel provided constitutionally inadequate assistance for due process purposes is evaluated under the same standard applied in Sixth Amendment right-to-counsel cases as stated in *Strickland v. Washington* (1984) 466 U.S. 668, 687-688 (*Strickland*). (See *Smith v. Robbins* (2000) 528 U.S. 259, 285; *In re Reno* (2012) 55 Cal.4th 428, 493.) That is, to prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate his counsel's performance was legally deficient—there was no rational tactical purpose for counsel's decision—and that it is reasonably probable that, but for that deficiency, the defendant would have received a more favorable outcome. (*People v. Rices* (2017) 4 Cal.5th 49, 80 (*Rices*); *People v. Mickel* (2016) 2 Cal.5th 181, 198 (*Mickel*); see *Strickland*, at p. 687.)

If the record ""sheds no light on why counsel acted or failed to act in the manner challenged,"" we must reject the claim ""unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation."" (*People v. Caro* (2019) 7 Cal.5th 463, 488; accord, *Mickel*, *supra*, 2 Cal.5th at p. 198 ["a reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ""no rational tactical purpose"" for an action or omission"].) Thus, "except in those rare instances where there is no conceivable tactical purpose for counsel's actions, claims of ineffective assistance of counsel should be raised on habeas corpus, not on direct appeal." (*People v. Lopez* (2008) 42 Cal.4th 960, 972; accord, *People v. Sepulveda* (2020) 47 Cal.App.5th 291, 301.)

Assuming defendant had a federal due process right to the effective assistance of counsel at his parole hearing, he has not demonstrated his counsel's performance at the hearing was legally deficient or that he was prejudiced by counsel's alleged deficiencies. Contrary to defendant's claims, the record indicates that his counsel at the parole hearing was thoroughly prepared. Counsel had adequately cross-examined all of the People's witnesses, had challenged the drug samples collected at the Recovery Center and the testing protocols used against him, had successfully challenged the admission of the toxicology reports based on evidentiary grounds, had confronted Agent Lopez on the admission form defendant had signed, and had shown alternative sanctions should have been recommended for defendant. While the record is clear that counsel never called any

12

witnesses to the stand and never asked the court to dismiss the case against him based on an alleged illegal arrest, it is silent as to the reason his counsel did not call any witnesses or ask to dismiss the case.  It is conceivable that the witnesses defendant had requested counsel to call were unnecessary, as those witnesses may have not been relevant or helpful to defendant's defense.  Furthermore, it is plausible that counsel did not request to dismiss the case because the arrest was valid, and the owner of the Recovery Center had authority to contact defendant's parole officer as Agent Lopez had directed defendant to complete a 90-day drug program at the Recovery Center.

In addition, the record overwhelmingly demonstrates that defendant had violated the terms of his parole by failing to complete a substance abuse treatment program and voluntarily admitting to the use of amphetamines and methamphetamines.  Defendant does not suggest, and the record does not reveal, that defendant did not voluntarily sign the admission form or that he was wrongly removed from the Recovery Center.  Indeed, defendant acknowledged his mistakes and apologized for his actions to the court, his counsel, his parole agent, and his support team.  Accordingly, even if defendant's counsel had performed below the standard of care, a proposition not affirmatively demonstrated by the record on appeal, nothing in this record remotely suggests that it is reasonably probable defendant would have received a more favorable outcome.  (*Rices*, *supra*, 4 Cal.5th at p. 80; *Strickland*, *supra*, 466 U.S. at p. 687.)

13

IV.

DISPOSITION

The trial court's order revoking defendant's parole is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


MILLER
Acting P. J.


FIELDS
J.